## Jacob Schack v. Edward B. McKey, Trustee.

1. RECEIVERS—*General Rule of Appointment.*—A receiver should never be appointed unless it is apparent to the chancellor from the showing made, that there is danger that the property which is the subject of the litigation will be dissipated or placed beyond the jurisdiction of the court, or in some way involved by transfers or conveyances, or by its being subjected to other claims, so as to render it more difficult for the court to give and enforce the final relief, to which the complainant may be found to be entitled.

2. SAME—*Application for an Appointment Addressed to the Sound Judicial Discretion of the Court.*—An application for the appointment of a receiver is addressed to the sound judicial discretion of the court, taking into account all the circumstances of the case, and if exercised, it is for the purpose of promoting the ends of justice and protecting the rights of all parties interested in the controversy and subject-matter, and is based upon the fact, made to appear to the court, that there is no

Schack v. McKey.

other adequate remedy or means of accomplishing the desired object of such proceeding.

3. SAME—*Nature of the Appointment.*—The appointment of a receiver and authorizing him to take possession of property, is the exercise of a higher and more reaching power than the granting of an injunction, and should not be resorted to where an injunction will as well serve the purpose and to the same extent protect the rights of the complainant.

4. SAME—*Rights of Parties Under the Law of this State—Where the Right of Appeal Does Not Exist.*—The law of this State gives to a party against whom an injunction has been issued, and over whose property a receiver has been appointed, a right of appeal, but from subsequent interlocutory orders relating to the sale and distribution of the property, no appeal is given.

5. CHANCERY PRACTICE—*Where the Allegations of the Bill Show that the Complainant Has a Remedy at Law.*—Where the material allegations of a bill to set aside a sale of goods as fraudulent and the affidavits in support of them make out no more than the case of a sale and delivery of a stock of merchandise for an inadequate consideration or for a pretended consideration for the purpose of hindering, delaying or defrauding creditors, and placing the property beyond their reach, it amounts to the statement of a case for which the law affords a full and adequate remedy, either in replevin to recover the goods in specie or in trover for their value.

6. SAME—*Where the Complainant Has a Complete Remedy at Law.*— The rule in this State is that a party who has a plain and adequate remedy at law, must proceed at law, and so long as his remedies at law are not exhausted he can not resort to a court of chancery.

7. SAME—*Effect of the Formal Reservation in an Answer in Chancery.*—The reservation by a defendant in his answer of all advantage he might have had by demurring to the bill, enables him, on the application for the appointment of a receiver and turning over to him the possession of the property which was the principal and substantial relief sought, to raise the question that the complainant has a complete and adequate remedy at law.

8. FRAUD—*Remedy Where a Sale is Fraudulent.*—If a contract of sale is fraudulent an action at law will lie at the suit of the proper parties for the value of the goods, and the fraudulent contract can not be interposed as a bar to a recovery.

**Bill to Set Aside a Sale of Merchandise,** and the appointment of a receiver. Appeal from the Circuit Court of Cook County; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1901. Reversed. Opinion filed July 30, 1901. Rehearing denied October 8, 1901.

**Statement.**—By the bill filed in this cause it was represented that on November 14, 1900, Abraham Meyer, of

Chicago, was the owner and possessor of two stocks of merchandise located at No. 109 Dearborn street and No. 219 West Madison street, in the city of Chicago; that he was at said places engaged in the tailoring business; that in the course thereof he had incurred liabilities aggregating about $8,000, and at the filing of said bill he was still indebted in such sum; that on said November 14th said Meyer, for the pretended consideration of about $3,300, sold, transferred and conveyed said stocks of merchandise to appellant by bills of sale and at once delivered possession thereof to said appellant, who, it is alleged in said bill, "is now in possession thereof and claims to be the owner of said merchandise by virtue of said pretended bills of sale, and refuses to surrender possession of said merchandise to appellee as trustee in bankruptcy of said Meyer, and threatens to sell and dispose of said stock for his own account and benefit, in disregard of the right of appellee as such trustee and of the creditors of said bankrupt."

It was alleged in said bill that on November 15, 1900, a petition in bankruptcy was filed against said Meyer, and that on December 11, 1900, he was adjudged a bankrupt, and that on January 3, 1901, appellee was appointed, under such bankrupt proceedings, trustee of all the assets and property of said Meyer. That the pretenses of said Meyer and of said Schack are fictitious and made for the purpose of covering up the title to said property and keeping the same from appellee as such trustee. "That in truth and in fact no consideration whatever passed from said defendant Schack to said Meyer for the transfer and sale of said merchandise; that said pretended sale was made without any consideration whatever, and for the purpose of hindering, delaying and defrauding the creditors of said Meyer and placing the property beyond their reach."

That said property was so transferred and delivered to said defendant, Schack, by said Meyer, to be held by said defendant in trust for the use and benefit of said Meyer and for the purpose of so hindering and delaying the creditors of said bankrupt, of which fraudulent purpose and intent

the said defendant, Schack, had notice at the time of said alleged purchase.

That the property claimed to have been sold by said Meyer in truth and in fact was worth at least the sum of $6,000, "and said pretended sale, if any was made, was for a totally inadequate consideration, and was and is fraudulent and void as against" appellee "as such trustee and the creditors of said bankrupt; that at the time of the making of said pretended sale said Meyer was wholly insolvent," and has, since the filing of said petition in bankruptcy, either absconded from the State or secluded himself within the State, without surrendering to appellee "any property or assets whatsoever."

The complainant in said bill further represented that he feared that unless said defendant, Schack, be enjoined from selling, transferring or otherwise disposing of the property so claimed to have been purchased by him from said Meyer, or unless a receiver is appointed to take possession of said property *pendente lite*, the rights of the complainant will be lost in the premises, and said property and proceeds dissipated and squandered.

The bill waived answer under oath, and was verified by the affidavit of the complainant, stating, " that he has read said bill of complaint and knows the contents thereof, and that the same is true of his own knowledge."

The defendant answered the bill, admitting the purchase of said merchandise, at one store for $2,070.76, and at the other store $1,376.96. That upon said purchase he, the defendant, immediately took possession of said goods and has since retained possession of the same and claimed that said purchase was in good faith, for a fair consideration, without any purpose of hindering or delaying the creditors of said Meyer and without any notice that said Meyer had any such intention, and averred that the transfer aforesaid was made to him in absolute good faith for the consideration named in two bills of sale, and denied that said sale and transfer was in any respect fraudulent or void, or for an inadequate consideration, and insisted that the purchase

was made without any intention or knowledge on the part of the defendant of any fraud on the part of said Meyer, actually or constructively, against his creditors or any of them.

The affidavit of one of the solicitors in said cause was filed with the bill, in which affidavit it was stated that the defendant, Schack, had been examined under oath before a referee in bankruptcy; "that from said examination it appeared that he claimed to have paid to the bankrupt the sum of about $3,300 for the merchandise referred to in said bill of complaint;" that he testified that he had procured the money November 13, 1900, from his private vault in the Graham Safety Deposit Company and carried said money with him until about four o'clock Wednesday, when he paid the same to said Meyer; that it further appeared from the examination of Schack that no receipt was taken for said payment; that thereupon the affiant had all of the employes of said Deposit Vault Company subpœnaed, and it appeared from the testimony of said witness that said Schack had not visited said deposit vault on the 12th, 13th or 15th days of November, and that it appeared by a record kept by said Deposit Vault Company that no visit was made by said defendant at said vaults on any of said days; that it appeared from the testimony of the cashier of Graham & Sons, bankers, that he, defendant, was a depositor for a year prior to November 14th; that within five months previous to November 15th, he had borrowed from said Graham & Sons, upon his individual note, an amount aggregating $1,600, of which about $1,100 had been paid, and at the time of giving the said bills of sale by Meyer, said Schack was indebted to said Graham & Sons, on account of said loan, to the extent of $500; that it also appeared from the testimony of said cashier, that said bankrupt, Meyer, kept a bank account with Graham & Sons, and said bank account did not show a deposit by said bankrupt of the sum of about $3,300, or any like amount, but on the contrary, no deposit was made in the account of said Meyer within ten days previous to the filing of said petition, or any amount exceeding $100, and that at the time of the

alleged sale there were but eight dollars and some cents to the credit of the said bankrupt with Graham & Sons.

The court appointed the complainant receiver of all the property described in the bill of complaint, "and now in the possession of said defendant," and ordered the defendant to surrender the same to said receiver, and authorized him to take possession of and hold the same until the further order of the court.

McEwen & Weissenbach, attorneys for appellant; Moran, Mayer & Meyer, of counsel.

Moses, Rosenthal & Kennedy, attorneys for appellee.

Opinion per Curiam.

In Hancock v. The American Bonding & Trust Company, 86 Ill. App. 630 (633), it is said:

"The general rule no doubt is, subject to a few exceptions, that a receiver should never be appointed unless it is apparent to the chancellor from the showing made that there is danger that the property which is the subject of the litigation is liable to be dissipated or placed beyond the jurisdiction of the court, or in some way involved by transfers or conveyances, or by its being subjected to other claims, so as to render it more difficult for the court to give and enforce the final relief to which the complainant may be found to be entitled."

An application for the appointment of a receiver is addressed to the sound judicial discretion of the court, taking into account all the circumstances of the case, and, if exercised, is for the purpose of promoting the ends of justice and of protecting the rights of all the parties interested in the controversy and the subject-matter, and is based upon the fact made to appear to the court that there is no other adequate remedy or means of accomplishing the desired object of the judicial proceeding. Pomeroy Ency. Jurisprudence, Secs. 30, 31.

The appointment of a receiver and authorizing him to take possession of property is the exercise of a higher and more far-reaching power than the granting of an injunc-

tion, and should not be resorted to where an injunction will as well serve the purpose of the judicial proceeding, and to the same extent protect the rights of the complainant.

The law of this State gives to a party against whom an injunction has been issued, or over whose property a receiver has been appointed, a right of appeal, but from subsequent interlocutory orders as to the sale and distribution of the property, over which a receiver has been appointed, no appeal is given. Had a mere preservative injunction been issued in this case, appellant would have been assured that his rights in and to this property would be preserved by a full hearing upon the merits. Whereas, a receiver appointed upon an interlocutory order might at any time, under the direction of the court, sell all this property, and it thus be forever passed away from his control, notwithstanding the final result of the litigation might establish that his purchase of the same was entirely valid and his title unimpeachable. In so far as one of the affidavits submitted by the complainant stated what appeared upon the taking of certain testimony, it should not have been considered. Certainly, evidence that would not be admissible when a witness is called to testify orally, is not permissible because presented in the form of an affidavit. Had the affiant been called in open court, he might have testified as to what he had heard the defendant say under oath or otherwise, but not as to what appeared from the defendant's statement.

Counsel, in respect to the criticism that the complainant's verification of the bill was a statement of things he could not have known of his own knowledge, say:

" The fact remains that the affidavit was so made, and the court has before it the verified bill stating positive facts, and the propriety of the order appointing a receiver will have to be tested upon the pleading as it stands."

All testimony, whether by way of affidavit, verification or otherwise, is addressed to the general knowledge and understanding of the tribunal before which it is presented.

The fact that a witness has sworn that of his own knowl-
edge he knows a particular thing, is an assertion to be
carefully considered by the court, but not necessarily to be
believed and acted upon.   If other evidence presented to
such tribunal the surrounding circumstances, or the general
knowledge which all men have is such that a particular
statement made by a witness is manifestly untrue, such
statement, so far from strengthening the cause of him in
whose behalf it is made, tends to weaken the force of other
things which said witness may declare.   1 Ency. Pl. and
Pr. 942;  Hartley's Appeal, 103 Penn. St. 23.

Appellee urges that the answer of appellant is not as full
and explicit as it ought to have been.   The answer might
have gone much less into details than it did.   Appellee
waived an answer under oath, and thereby placed appellant
in a position where he might make his answer a mere
pleading, stating technically and formally enough to con-
stitute an issue upon the material allegations of the bill.

The material allegations of the bill, and the affidavits in
support thereof, so far as they are entitled to be consid-
ered, make out no more than the case of a sale and delivery
by Meyer to Schack of the stocks of merchandise for an
inadequate consideration, or for nothing but a pretended
consideration, for the purpose of hindering, delaying and
defrauding the creditors of Meyer, and placing the property
beyond their reach.

This is the statement of a case for which the law affords
a full and adequate remedy, either in replevin to recover
the goods in specie, or in trover for their value.

Whatever may be the doctrine of other courts, the rule
in this State is unmistakable that a party who has a plain
and adequate remedy at law must proceed there, and so
long as his remedies at law are not exhausted he may not
resort to a court of equity.   Gore v. Kramer, 117 Ill. 176;
County of Cook v. Davis, 143 Ill. 151;  Kimball v. Walker,
30 Ill. 482;  Comstock v. Henneberry, 66 Ill. 212.

The reservation by appellee in his answer of all advantage
he might have had by demurring to the bill, enabled him,

on the hearing of the application for the appointment of the receiver and the turning over to him of possession of the property, which was the substantial relief sought by the bill, to raise the question that appellant had a complete and adequate remedy at law. Black v. Miller, 173 Ill. 489; 1 Daniell's Ch. Pl. and Pr. 715.

Taking the bill and affidavits to be true, a case for an action of replevin to recover the specific property is probably made out. The objection to such a form of remedy, that a replevin bond would have to be given by appellee that might subject the estate in bankruptcy to a possible liability which the bankruptcy court might hesitate to authorize, does not seem to possess much force. The little weight to which the objection is entitled does not seem to have prevented the appellee from giving a receiver's bond of $6,000 in this proceeding. The objection urged to the other forms of action, in trover or assumpsit, that are open to appellant for a recovery of the value of the property, can not be sustained on the ground that it might be difficult to collect a judgment that might be recovered. There is no allegation in the bill that in anywise tends to show that appellant is not able to respond to any judgment that might be recovered against him in such a suit, and in the absence of an allegation or showing of that kind, the presumption is that he is able.

But it is urged that the equity court acquired jurisdiction because the transaction was a fraudulent one. The fraud relied upon is in the sale and purchase of the merchandise for an inadequate consideration, or for only a pretended consideration, that was not real at all. It is not every fraudulent act that will authorize a court of equity to take jurisdiction. It is only in cases where complete justice can not be done at law that equity will interfere. In many instances of fraud, the law courts can give as full remedy as can be had in equity. In this case it would be only because of fraud that suits at law could be successfully maintained, in replevin or trover, and we have shown that if because of the fraud replevin would give to appellee the goods in kind,

or their value in trover, the remedy of appellee is just as complete at law as it could possibly be in equity.

As is said in Gore v. Kramer, *supra*, "it is clear that if the contract of sale was fraudulent, an action at law would lie for the value of the goods, and the fraudulent contract could not be interposed to bar a recovery."

We think there was plain error in appointing a receiver of the goods mentioned, and in ordering the appellant to turn over possession of the goods in question to the receiver, and to that extent the order appealed from is reversed.