RALPH HURST, Plaintiff, *v.* STANLEY A. PAPIERZ *et al.,* Defendants—
(ROBERT K. RAUTH, Counterclaimant-Appellee, *v.* STANLEY A. PAPIERZ
*et al.,* Counterdefendants-Appellants.)

(No. 58750;

First District—December 18, 1973.

Arvey, Hodes & Mantynband, of Chicago (J. Herzl Segal, Gary D. Friedman, and Lawrence C. Rubin, of counsel), for appellants.

Thomas D. Nash, Jr. and Robert M. Ahern, both of Chicago, for appellee.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Counterdefendants appeal from the following decree entered by the Circuit Court of Cook County:

"DECREE

This cause coming on to be heard on all of the pleadings herein and the Court having considered the Appellate Court Opinion, Judgment and Mandate rendered in this cause (*Hurst-v-Papierz*, 129 Ill.App.2d, 117, 262 N.E.2d 773), reversing the May 22, 1968, Decree of this Court, and the Court having considered the arguments of counsel and being fully advised in the premises, FINDS:

(A) That this Court has jurisdiction of the parties hereto and the subject matter hereof.

(B) That the Appellate Court found that the equities in this cause are with the counterclaimant, ROBERT RAUTH, and against the counterdefendants, STANLEY PAPIERZ, THERESA PAPIERZ and STANLEY PAPIERZ BUILDERS, INC. and that ROBERT RAUTH is entitled to the relief directed to be given to him by said Mandate.

(C) That the counterdefendants, STANLEY PAPIERZ, THERESA PAPIERZ and STANLEY PAPIERZ BUILDERS, INC., were found by the Appellate Court to have wrongfully and fraudulently denied ROBERT RAUTH's 30% interest as a joint venturer in the Villa Venice apartment building complex; it was further found that since 1963 said defendants excluded ROBERT RAUTH from the operation and profits of said apartment building complex and that said counterdefendants possessed and operated

said apartment buildings and refused to account to ROBERT RAUTH.

(D) That the Appellate Court found that the counterdefendants, STANLEY PAPIERZ and THERESA PAPIERZ, and the counterplaintiff ROBERT RAUTH, were joint venturers in the real estate development known as "Villa Venice West" and that ROBERT RAUTH owned a 30% interest therein.

(E) That the Illinois Appellate Court, First District, directed this Court to enter a Decree as follows:

(1) directing the conveyance by Stanley Papierz Builders, Inc. to S. P. Construction, Inc. of the property described in Paragraph 11 of the Rauth Counterclaim;

(2) granting Rauth the relief sought in Paragraphs (b), (c), (d) and (e) of the prayer for relief sought in his Counterclaim;

(3) entering such further orders as may be just and equitable; and

(4) vacating its order assessing the Master's fees and reassessing them in the light of this opinion.

(F) That no Petition for re-hearing of the Decision of the Appellate Court was filed nor was a Petition for leave to appeal to the Illinois Supreme Court and the Mandate of the Appellate Court remanding this cause to this Court issued in the Appellate Court on January 7, 1971.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED:

1. That the Decree entered herein on May 22, 1968, be and the same is hereby vacated, set aside and held for naught insofar as it dismissed the Amended Counterclaim of ROBERT RAUTH.

2. That ROBERT RAUTH is hereby decreed to be the owner of a 30% interest in the real estate development known as "Villa Venice West" as represented by his ownership of 30% of the outstanding common stock of S. P. Construction, Inc..

3. That defendants, STANLEY A. PAPIERZ, THERESA PAPIERZ, STANLEY PAPIERZ BUILDERS, INC., and any other person, firm or corporation asserting any interest in the following described property shall forthwith convey to S. P. Construction, Inc., a corporation, said premises located in the Village of La Grange, Illinois:

Lots 1 to 48 in Block One and Block Eight in First Addition to West Chicago, being a Subdivision of that part of the West one-

half of the South East one-quarter of Section 9, Township 38 North, Range 12, lying North of Vial Road (so called) in Cook County, Illinois.

Said conveyance shall be and is intended to included all of the real property, buildings, garages, outbuildings and all other structures appurtenant to and comprising a part of the apartment building complex known as "Villa Venice West" and located as aforesaid.

4. From and after the entry of this Decree, all income, receipts, revenues and proceeds thereafter derived from the operation of "Villa Venice West", in whatsoever form, and all assets, including cash on hand, shall become the property of S. P. Construction, Inc.

5. Michael P. Giambrone is hereby appointed Receiver to manage "Villa Venice West" until further order of this Court. Said Receiver shall be paid for his services the usual and customary charges paid therefor in the metropolitan Chicago area from the gross collections made by him from "Villa Venice West". Said Receiver shall be responsible for the collection of all rentals and payments of all expenses. No extraordinary payments for capital improvements, or otherwise, shall be made by the Receiver without the consent of the parties hereto, and failing such consent, by order of Court. Said Receiver shall submit to the parties a monthly statement with respect to his operation and conduct of "Villa Venice West."

6. From and after the entry of this Decree, all parties hereto shall be and they are hereby enjoined and restrained, until further order of this Court, from paying or disbursing any proceeds derived from the operation of "Villa Venice West" to any person, firm, or corporation other than S. P. Construction, Inc., excepting the Receiver for the purposes hereinabove described in paragraph 5.

7. That from and after the entry of this Decree and until further order of this Court, S. P. Construction, Inc. is enjoined and restrained from paying any salaries, dividends, fees, allowances, or emoluments of any kind or description to any of the parties hereto, their transferees or assigns.

8. That S. P. Construction, Inc. is, from and after the date of this Decree, enjoined and restrained from expending or employing any of its income, assets, or funds in connection with the litigation herein involved, or any other subsequent related cause,

whether by way of attorneys' fees, court costs, or otherwise.

\* \* \*

14. That the Order heretofore entered herein denying the motion of Robert Rauth to dismiss the petition for an equitable lien filed in October of 1971 by Stanley Papierz, Theresa Papierz, S. P. Construction, Inc. and Stanley Papierz Builders, Inc. be and the same is hereby vacated, set aside and held for naught. That said petition for an equitable lien be and the same is hereby denied inasmuch as matters contained in said petition were not raised in either the Trial Court or the Appellate Court and the relief sought therein was not provided for in the Mandate of the Appellate Court. This Order is without prejudice to the rights of said defendants as set forth in their petition for equitable lien.

15. That Stanley Papierz, Theresa Papierz and Stanley Papierz Builders, Inc. are jointly and severally liable to Robert Rauth for the following sums and shall pay same to him forthwith:

Bill of Costs taxed by Clerk of
Appellate Court, First District,
in re *Hurst v. Papierz, et al.*,
No. 53331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .$ 624.30

1,431.25

Total $2,055.55

\* \* \*"

■■ Counterdefendants first contend that the trial court had no authority to order an accounting because paragraph (g) of Rauth's complaint prayed for an accounting and this court in the prior appeal of this case did not grant that request. They argue that counterplaintiff's prayer for an accounting was barred by the doctrine of "res judicata". However, we are not concerned here with the doctrine of res judicata but with a doctrine known as "law of the case".

"The doctrine that a determination of a question of law made by an appellate court in the course of an action becomes 'the law of the case' and may not be disputed by a reopening of the question at a later stage of the litigation is similar, analogous, and akin to the doctrine of res judicata, and has many things in common therewith. Both doctrines are founded on a public policy against reopening that which has previously been decided. However, the doctrine of the law of the case is not identical with the doctrine of res judicata, but differs in many important respects, and is distinguishable therefrom. \* \* \*" 46 Am.Jur.2d, Judgments, par. 400, pp. 567-68.

One of the differences is pointed out in 5B C.J.S., Appeal and Error, Par. 1822, page 191, where it states that the rule of the law of the case is applicable only when the same point was decided on a previous appeal, while the doctrine of res judicata applies to all questions which might have been litigated under the issues formed in the case as well as those actually decided. Therefore under the doctrine of the law of the case, the trial court was not precluded from ordering an accounting even though this issue was presented to but not decided by us in our prior opinion.

■■ However, we believe that the plain language of our prior opinion did empower the trial court to order an accounting if he thought that this should be done. In our previous decision, we held that Rauth had been defrauded by counterdefendants. Accordingly, we reversed and remanded this case to the trial court with directions to enter a decree ordering certain specific relief and for "such orders as may be just and equitable." This manifested a clear intent to grant certain specific relief to Rauth while leaving great discretion with the trial court to do complete justice and finally dispose of all aspects of the case. This would include the power to order an accounting and the use of any other legal tool to finally resolve this case.

Counterdefendants also contend that even though we determine that the trial court properly ordered an accounting, the method by which it is to be taken is contrary to Illinois law. After ordering an accounting, the trial court appointed an accounting firm to determine the net sums due and payable to Robert Rauth from the counterdefendants. We find no authority in law for a method of accounting which does not set forth a procedure by which evidentiary questions may be adjudicated. Whether the suit is referred to a master or is heard by the court itself, each party has a right to be heard in support of his rights. On the hearing they have a right to introduce evidence, cross-examine witnesses and take the various steps authorized by law to protect their rights.

Appellants suggest that the trial court should follow the rules of the Circuit Court of Cook County in taking the accounting, and refer the accounting to a master-in-chancery. Counterdefendants would then submit their accounts before the master and Rauth could then review the accounting and have complete access to the books and records. Rauth could then file objections to the accounting and counterdefendants could then respond to his objections which would establish the issues. An evidentiary hearing could then be held to adjudicate the disputed items and objections to the master's report could then be filed before the circuit court. They state that this is the only procedure deemed proper by the Illinois Supreme Court in complicated accounting suits. *Williams v.*

*Lindblom* (1896), 163 Ill. 346; *Patterson v. Johnson* (1895), 113 Ill. 559.

Prior to the passage of the new Illinois Constitution, there was a long line of cases in Illinois which held that in the case of a complicated accounting, the taking of such such should be referred to a master in chancery. However, Section 8 of Article VI of the Illinois Constitution now provides that "there shall be no masters in chancery or other fee officers in the judicial system". Constitution, Article IV, Section 8, *as amended*, effective Jan. 1, 1964.

■■ In view of the foregoing, the trial court itself must conduct the accounting, try all the issues, administer full relief to the parties and grant a judgment for the balance found due. In so doing, it is suggested that the trial court should follow established accounting procedures, except that it should not refer the case to a master or other fee officer as prohibited by the Illinois Constitution. In addition, it is suggested that the parties use the broad discovery tools available to them in the Supreme Court Rules.

■■ The counterdefendants next contend that the trial court's decree impermissibly ordered the conveyance of an entirely different parcel of land than the one specified in the mandate. Although it is generally true that a trial court must follow the specific directions of a higher court's mandate to the letter, the purpose of this rule is to insure the decree is congruent with the decision of the higher court. It is not a rule to be used by unsuccessful parties to thwart the conclusion of the case. In 1970, this court decided the equities in favor of the counterclaimant. Pursuant to this conclusion, a package of specific equitable remedies was granted to achieve a certain result, to-wit: To recover that property (as described in paragraph 11) to S. P. Construction, Inc., which had been fraudulently conveyed to Stanley Papierz Builders, Inc., and to enjoin the trustee which held legal title to the rest of the property (as described in paragraph 4) involved in the joint venture from conveying it to any other than S. P. Construction, Inc. While this appeal was under consideration, the counterdefendants ordered the trustee to convey the property it held to S. Papierz Builders, Inc., and not S. P. Construction, Inc., and the trustee in fact has made that conveyance. In silence, the counterdefendants allowed this court to enjoin the trustee from conveying that property it in fact had already conveyed. This behavior by the counterdefendants was a badge of fraud. (37 Am.Jur.2d, *Fraudulent Conveyances*, § 10, p. 701-02; 37 C.J.S. *Fraudulent Conveyances*, §§ 79 and 82.) The counterdefendants now wish to benefit from this behavior by asserting the chancellor was bound to do exactly as the mandate ordered. Equity will not allow the infliction of more fraud or the thwarting of justice by wrongdoers who hide under the guise of legal procedure.

(30 S.J.S., *Equity*, § 89, p. 980.) Even if it could be shown that the conveyance by the trustee to another not S. P. Construction, Inc., was not fraudulent but merely an innocent mistake of law or fact entertained by both parties, equity would not permit it, for in substance it would unjustly enrich the counterdefendants by giving Rauth only one-third of his 30% interest in the venture. (30 C.J.S., *Equity*, § 89, p. 983.) In sum, under the circumstances, the chancellor's modification of this court's direction was entirely warranted and equitable.

Counterdefendants also contend that the chancellor erroneously described their behavior as wrongful and fraudulent. This is a frivolous argument. This court found the counterdefendants' behavior to be constructively fraudulent. The contention that constructive fraud is not wrongful or fraudulent is empty rhetoric.

Counterdefendants also disagree with the trial court's finding that Rauth is a 30% owner of the Villa Venice Apartments in La Grange, Illinois, but instead contend that Rauth only owns 30% of the outstanding stock in S. P. Construction, Inc. This issue was decided in 1970; Rauth is a co-venturer in the Villa Venice Apartments development. S. P. Construction, Inc., was a vehicle used by the joint venturers to help finance the venture and to hold title to the property acquired for the venture. In sum, the matter is res judicata and counterdefendants' argument is without merit.

Finally, we come to the interlocutory appeal which challenges the ancillary and provisional relief decreed by the trial court which essentially was intended to remove control and possession of the assets of the joint venture from the counterdefendants and place these assets *in custodia legis* until the accounting was complete and the case entirely resolved. The counterclaimant asked for a receiver after this court decided the equities in his favor in 1970. The counterdefendants had notice of this request for a receiver and were given an opportunity to present written and oral arguments opposing the appointment of a receiver before the now-disputed decree was issued in 1973, as evidence by the record of proceedings before the chancellor upon remandment.

■■■ Appointment of a receiver is considered generally to be a harsh remedy. Nevertheless, it resides in the arsenal of equitable remedies to be used when in the sound discretion of the chancellor it is needed to insure complete justice is done between the parties. (*People ex rel. Scott v. Pintozzi*, 50 Ill.2d 115, 227 N.E.2d 844; *Schack v. McKey*, 97 Ill.App. 460; *St. Louis, Vandalia & T. H. R.R. Co., v. Town of Vandalia*, 103 Ill. App. 363; *Taylorville Savings Loan and Bldg. Assn. v. Korenjack*, 275 Ill.App. 616.) In equity, the particular circumstances surrounding the case are the criteria by which to judge whether or not the appointment

of a receiver was reasonable, *i.e.*, not arbitrary, capricious and an abuse of discretion. Considering that counterdefendants were found to be joint venturers with Rauth and defrauded him and have contumaciously and consistently resisted this conclusion in various ways, including behavior which appears to be continuing bad faith and at the very least a badge of ‘fraud, we hold the appointment of a receiver and the imposition of the complained of temporary injunctions were proper in this case. (*Hancock v. American Bonding & Trust Co.*, 86 Ill.App. 630.) It is reasonable to fear that there is a danger in this case that the property which belongs to the joint venture may be placed beyond the jurisdiction of the court or in some way involved in transfers, conveyances or subjected to other claims, so as to render it more difficult for the court to give and enforce final relief to which counterclaimant may be found entitled at the conclusion of the accounting. *Schack v. McKey*, 97 Ill.App. 460; *Ditis v. Ahlvin Construction Co.*, 344 Ill. App. 551, 101 N.E.2d 633; 48 C.J.S., *Joint Adventure*, § 12(i), p. 861.

For the foregoing reasons the judgment of the trial court is affirmed except for that portion which provided for the appointment of the accounting firm to take the accounting.

The judgment of the trial court is affirmed in part and reversed in part. This case is remanded for action consistent with this opinion.

Affirmed in part, reversed in part and remanded.

EBERSPACHER and CREBS, JJ., concur.