MAURICE LICHTENSTEIN *et al.,* Plaintiffs-Appellees, *v.* THE ANVAN COMPANY *et al.,* Defendants-Appellants.

First District (3rd Division)   No. 77-1292

Opinion filed June 28, 1978.

Robert J. Peters, Patrick F. Bradley, and John N. Tierney, all of Chicago, (Frankel, McKay, Orlikoff, Denten & Kostner, of counsel), for appellants.

Paul Bernstein, Robert Hoffman, and Morris Solomon, all of Bernstein & Waller, of Chicago, for appellee Maurice Lichtenstein.

Ira D. Leavitt and Mitchell F. Asher, both of Beaubien & Asher, of Chicago, for appellee Robert Flannery.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiffs, former partners in defendant Anvan Company, a partnership, brought this action seeking a mandatory injunction requiring an accounting and the distribution of plaintiffs' pro rata shares in said partnership. Defendants counterclaimed, alleging certain fraudulent acts and conversions of partnership assets and business opportunities by plaintiffs. The trial court granted judgment for plaintiffs pursuant to an account stated by the court. The trial court granted plaintiff Lichtenstein $63,432 and plaintiff Flannery $95,147. These amounts represented the purchase price of plaintiffs' interests in Anvan. The court further found that there was no just cause to delay enforcement of or appeal from the order. The trial court also transferred defendants' counterclaims to the law division of the circuit court where they are pending.

Anvan Company was formed by defendants Anthony A. and Irene D.

Antoniou on January 1, 1971, pursuant to written articles of general partnership. The Antonious own the stock of certain affiliated companies: Anvan Realty and Management, Anvan Hotel Corporation, Anvan Corporation, and Anvan Industries, Inc.

On July 20, 1970, Flannery was hired by Anthony to manage the properties of Anvan Hotel. Flannery eventually was promoted to the position of senior vice-president in charge of administration for the aforementioned affiliates and, on March 3, 1972, was admitted to the partnership. Lichtenstein was hired on April 1, 1971, to work for Anvan Industries and became senior vice-president in charge of finance and corporate planning for the Anvan affiliates. On April 5, 1972, Lichtenstein became a partner of Anvan Company.

In the Anvan articles of partnership, the interest of each partner is evidenced by the issuance of capital units in one or more of the following six categories:

(1) A Class A partner is required to own at least one Class A capital unit and be an employee of the partnership or an Anvan affiliate. A Class A partner has a voice in the management of the partnership and each Class A capital unit is entitled to one vote.

(2) A Class B partner is required to own at least one Class B capital unit, but is not required to be an employee of Anvan Company or an affiliate. A Class B partner has a voice in the management of the partnership and is entitled to one vote per Class B capital unit.

(3) A Class C partner has rights and obligations identical to those of a Class A partner. In addition, upon termination of Class C partner's employment for any reason, he or his successor in interest immediately becomes a Class F partner.

(4) A Class D partner must meet the ownership and employment requirement of Class A and C partners, but has no voice in the management of the partnership and no vote in partnership affairs. A Class D partner also becomes a Class F partner upon termination of employment for any reason.

(5) A Class E partner must also meet the basic ownership and employment requirements and has no voice or vote in the management of the partnership. The interest of a Class E partner is merely the right to participate in the profits or losses of the partnership for the period of time during which he is a Class E partner. A Class E partner's interest is extinguished upon termination of employment for any reason and his only recourse is a claim for undistributed profits or losses.

(6) A Class F partner is either a former Class C or Class D partner whose employment by the partnership or an affiliate has been terminated. A Class F partner cannot be an employee of the

partnership or any other Anvan company and has no voice or vote in the management of the partnership.

Anthony Antoniou is a Class A and managing partner of Anvan Company. Irene is a Class B partner. At the time of Flannery's admission to the partnership, he was issued 200 Class D and 200 Class E capital units. On July 1, 1973, his interest was converted to 300 Class D and 100 Class E capital units. Upon Lichtenstein's admission to the partnership, he acquired 100 Class D and 300 Class E capital units. One year later his interest was converted to 200 Class D and 200 Class E capital units.

On August 13, 1973, Lichtenstein's employment was terminated; the following month, Flannery's employment was ended. Since plaintiffs were no longer employed by the partnership or an affiliate, their Class D capital units were transferred into Class F and they became Class F partners. Their respective interests as Class E partners were extinguished upon termination of their employment.

Plaintiffs' complaints sought a mandatory injunction requiring defendants to render an accounting. Defendants in their answer and counterclaim alleged that plaintiffs paid no consideration for their partnership interests, that they had obtained the certificates of capital units by means of fraud, and were attempting to compete with the partnership in violation of their fiduciary duties.

Pursuant to a consent decree, defendants tendered to plaintiffs an audit prepared by Harris, Kerr, Forster & Company (hereinafter "HKF"). The decree further provided that within 60 days after defendants filed their audit, plaintiffs could submit any objections hereto. Plaintiffs were permitted to retain accountants to assist in the analysis of defendants' audit.

The audit computed the value of plaintiffs' partnership interests in accordance with article VIII of the partnership agreement. That article details the manner in which capital units of a withdrawing partner are to be acquired by the partnership. HKF's audit found that for purposes of acquisition and sale of plaintiffs' interests in any arm's length transaction on the open market, those interests had negative values.

Plaintiffs filed objections to the HKF audit directed to the interpretation of several key terms used in the partnership agreement including "cash flow" and "partnership general, debt, obligation and unpaid expenses" relating to projects in which plaintiffs had an interest. Defendants filed a supplementary audit of HKF which made corrections and calculations with respect to plaintiffs' pro rata interests. The supplementary audit included an appendix which recited authority for the definitions adopted and the conclusions reached in HKF audit.

Plaintiffs retained the accounting firm of Laventhol & Horwath (hereinafter "L&H") to analyze the HKF audit and to prepare its own

audit. In a letter prefacing its audit, L&H, in reference to the lack of definitional guidance in the partnership agreement, stated:

"Without the benefit of precise definitions, the terminology used is open to argument as to the intent of the parties to the agreement. As we observe throughout our report, the results are significantly different when alternative definitions are employed."

The L&H report noted that HKF, in determining "cash flow," included income and items which do not require the use of cash, but excluded debt principal payments. L&H was of the opinion that if debt principal payments were to be deducted from cash flow, consistency demanded that the proceeds of debt financing be added thereto. The importance of the inclusion or exclusion of the proceeds of debt financing in the determination of cash flow is illustrated by the disparity between the two reports regarding the deductions for debt from plaintiffs' interests. Under HKF's definition of cash flow, excluding the proceeds of debt financing, $150,889 was the deduction for debt from Lichtenstein's interest and $226,330 was deducted from Flannery's interest. The deductions of these amounts from plaintiffs' interests resulted in a finding that those interests had negative values according to the HKF report. When the proceeds of debt financing are included in the determination of cash flow, L&H computed the deductions as $15,014 and $22,521, respectively. According to the L&H report, plaintiffs' interests had a positive and substantial value. L&H also was of the opinion that approximately $5,000,000 had been deducted improperly as an item of debt. Under article VIII of the partnership agreement, the items of debt which could be deducted in computing a withdrawing partner's interest were those which related to one of seven categories of partnership projects. Since the HKF audit did not allocate the $5,000,000 deduction to any specific partnership projects, L&H concluded that this amount should not have been deducted in computing plaintiffs' interest.

After both audits were submitted to the trial court, the parties presented pretrial memoranda which defined the issue to be resolved by the court. In their memorandum plaintiffs stated that the language of the partnership agreement was ambiguous in that several key terms were capable of more than one definition, and that it should be strictly construed against defendants as drafters of the agreement. Defendants' memorandum stated that in order to ascertain the meaning of the disputed terms, the court would have to look to the circumstances of the agreement's negotiations. Defendants also stated that plaintiffs had played a major role in the drafting of the Anvan partnership articles.

On April 28, 1977, a pretrial conference was held at which the parties appeared by their counsel. No witnesses were present, and neither side

presented evidence. At that conference, the trial court interpreted the partnership agreement and proceeded to state an account between the parties. In so doing, the court stated that it was accepting the figures set forth in the HKF audit, but that L&H's definition of cash flow, which included the proceeds of debt financing, would be applied to determine plaintiffs' interests. The court further agreed with L&H's conclusion that the HKF report did not demonstrate to which, if any, partnership projects the $5,000,000 debt deduction related.

Defendants contend on appeal that the trial court erred in not allowing them any evidentiary hearing on the question of the proper interpretation of the partnership agreement and that the court's refusal to allow them to present evidence constituted a denial of due process. Additionally, defendants contend that since their counterclaims were still pending, the trial court abused its discretion in holding that its judgment order was final and appealable.

Since it is dispositive of the appeal, we shall consider first defendants' contention that they were entitled to an evidentiary hearing before entry of judgment. Defendants argue that since there was an ambiguity in the partnership agreement and since the parties disagreed as to the proper interpretation of the disputed terms, the trial court improperly stated an account without affording them the opportunity to present evidence of the circumstances surrounding the negotiation of the agreement and to adduce evidence as to disputed terms. Defendants claim additionally that such evidence would demonstrate not only that plaintiffs understood the meaning of the terms as used in the articles of partnership, but also that plaintiffs actively participated in the drafting of the agreement, thus rendering them equally responsible for any lack of definitional guidance. In support of their entire contention, defendants cite *Hurst v. Papierz* (1973), 16 Ill. App. 3d 574, 306 N.E.2d 532, wherein this court stated at page 579:

> "We find no authority in law for a method of accounting which does not set forth a procedure by which evidentiary questions may be adjudicated. Whether the suit is referred to a master or is heard by the court itself, each party has a right to be heard in support of his rights. On the hearing they have a right to introduce evidence, cross-examine witnesses and take the various steps authorized by law to protect their rights."

Plaintiffs concede that in a case involving a complex accounting due process may require an evidentiary hearing. Plaintiffs state, however, that the present case does not involve numerical or transactional complexities, but rather a simple question of the proper interpretation of a few disputed terms. They contend that the trial court acted properly in stating

the account at the pretrial conference. See *Barnes v. Barnes* (1918), 282 Ill. 593, 118 N.E. 1004; *Conrad v. Beaubien* (1948), 334 Ill. App. 198, 78 N.E.2d 846.

Plaintiffs further argue that the trial court was correct in accepting the recommendations in the L&H report that the proceeds of debt financing should be included in the determination of cash flow and that approximately $5,000,000 was deducted improperly as an item of debt. Plaintiffs contend that since the individual defendants were the only signatories to the original partnership agreement and were the only partners who could amend the agreement, any ambiguity therein should be construed strictly against defendants. (See *Coney v. Rockford Life Insurance Co.* (1966), 67 Ill. App. 2d 395, 214 N.E.2d 1.) Neither plaintiff was admitted to the partnership until after the partnership agreement was executed and, as Class D partners, plaintiffs had no vote in partnership affairs. Plaintiffs therefore urge that the trial court correctly attributed any vagueness in the agreement solely to defendants and in construing the language in favor of plaintiffs.

■■■ We believe defendants were entitled to an evidentiary hearing. Although this case admittedly does not involve complex accounting procedures, a question of fact existed as to the definition attached to the terms "cash flow" and "partnership general debt, obligations and unpaid expenses." In the preface to its analysis of the HKF report, the accounting firm retained by plaintiffs itself recognized that there are several possible definitions which could be accorded to these terms and that the results differ significantly when alternative definitions are employed. Although the question of whether an ambiguity exists is a question of law for the trial court (*Gaffney v. William J. Burns Detective Agency International, Inc.* (1973), 12 Ill. App. 3d 476, 299 N.E.2d 540), where there is an ambiguity and the extrinsic evidence is in conflict, a fact question is presented for resolution by the trier of fact. (*Storybook Homes, Inc. v. Carlson* (1974), 19 Ill. App. 3d 579, 312 N.E.2d 27.) In the present case defendants alleged plaintiffs were aware of the interpretation placed by the parties upon the disputed terms and plaintiffs have denied such an allegation. The burden of proof also was upon defendants to justify the deductions from plaintiffs' interests shown in the HKF audit. (*Knights of the Ku Klux Klan v. First National Bank* (1928), 254 Ill. App. 264.) Since the terms used in the agreement were open to more than one reasonable interpretation, evidence of extrinsic facts and circumstances was admissible to determine the true intent of the parties. (*Standard Steel & Wire Corp. v. Chicago Capital Corp.* (1975), 26 Ill. App. 3d 915, 326 N.E.2d 33; *Rivan Die Mold Corp. v. Stewart Warner Corp.* (1975), 26 Ill. App. 3d 637, 325 N.E.2d 357.) The trial court's action in refusing to permit defendants to present evidence in support of their interpretation of the

partnership agreement denied them the opportunity to sustain their burden of proof.

Moreover, the trial court impliedly recognized that the burden was on defendants to justify the deductions for debt from plaintiffs' interests. In holding that approximately $5,000,000 had been deducted improperly as an item of debt, the trial court noted that the HKF audit failed to show to which partnership projects this debt related. It was erroneous for the trial court to refuse to permit defendants to present evidence on this point and then proceed to rule in plaintiffs' favor because no evidence before the court justified the deduction.

In view of our holding that defendants were entitled to an evidentiary hearing on the proper interpretation of the partnership agreement, it is unnecessary to consider whether the trial court abused its discretion in holding that there was no just reason to delay enforcement of or appeal from the judgment.

For the reasons stated, the judgment of the circuit court of Cook County is reversed and the cause is remanded for further proceedings consistent with the holdings of this opinion.

Judgment reversed and remanded.

JIGANTI, P. J., and McGILLICUDDY, J., concur.