**Leo G. B. WELT, Plaintiff,**

v.

**KOEHRING COMPANY, a corporation, Defendant.**

**No. 75 C 1760.**

United States District Court, N. D. Illinois, E. D.

Oct. 22, 1979.

Jonathan G. Bunge, Price, Cushman, Keck, Mahin & Cate, Chicago, Ill., for plaintiff.

Frederic S. Lane, Sonnenschein, Carlin, Nath & Rosenthal, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Leo G. B. Welt has brought this breach of contract action against the Koehring Company for its failure to pay commissions allegedly due as a result of Welt's assistance to the defendant in obtaining an equipment sales agreement with the government of Poland. Count I alleges an oral agreement

between the parties to pay Welt commissions on Koehring's sales to Poland. Count II alleges the existence of an oral agreement, supplemented by a confirmatory memorandum, to the same effect. Moreover, Welt alleges that the agreement set forth in Count II also entitled him to commissions on the sale of Polish-made goods by Koehring. Finally, the plaintiff asserts in Count III that he is entitled to compensation for his efforts on behalf of Koehring under theories of implied contract or quantum meruit. In light of the complexity of the dealings between the parties, the Court will provide a brief sketch of the transactions which gave rise to this case:

*June, 1970.* Welt accompanied Carey Haynes, an official of Koehring, to an exhibition in Moscow. The parties agree that one of Welt's functions at this exhibition was to help Haynes make business contacts. Koehring entered into no sales agreements during this trip.

*Fall, 1970.* Welt accompanied Haynes on a three-week business trip to the Soviet Union and other eastern European countries, including Poland. Although there is no clear agreement between the parties on this score, Welt's function evidently was the same as on the earlier trip to Moscow. Again, no sales agreement was entered into during this trip.

*January, 1971.* Welt arranged a meeting between Koehring officials and Ted Kaminski, the Polish commercial attache in Chicago. It appears from the transcripts that Kaminski sought to persuade Koehring to pursue vigorously the possibility of a cooperation agreement with Poland. Welt at this meeting allegedly urged Roger R. Regelbrugge, a vice-president of Koehring's International Group, to travel to Poland himself to seek such an agreement.

*February, 1971.* Regelbrugge and Haynes traveled to Warsaw to negotiate a cooperation agreement with Bumar, the of-

ficial Polish agency. On February 20, 1971, the parties signed a "Memorandum of Understanding," which Koehring has characterized as an agreement to agree. Welt did not accompany the Koehring officials on this trip; however, he alleges in an affidavit and brief that the groundwork for this agreement had been laid by his earlier initiatives and trips abroad with Haynes.

*April, 1971.* Regelbrugge and Haynes traveled to Warsaw for further negotiations. There is some dispute as to whether Koehring asked Welt to be present at these negotiations and the role which Welt played at the meeting. It is agreed, however, that Welt in fact did attend the April, 1971, meeting in Warsaw. The parties also disagree about the fruitfulness of the negotiations. Koehring states that it considered the hopes of agreement to be dead. Welt, on the other hand, asserts that substantial progress toward an agreement was made, and that the terms of the agreement ultimately signed in April, 1972, were substantially similar to the drafts discussed at this meeting.

*May, 1971.* Welt and Koehring carried on discussions concerning a way to resolve the problems that had precluded agreement at the April, 1971, meeting. These discussions resulted in an oral agreement between the parties, with a confirmatory memorandum from Regelbrugge to Welt dated May 25, 1971.[1] As will be seen below, there is substantial disagreement as to the meaning of that agreement.

*February, 1972.* Regelbrugge and Haynes returned to Warsaw for further negotiations. Welt did not attend this conference. Koehring argues that the proposal presented at this meeting was substantially different from those discussed at earlier meetings, and in particular, was not the product of or traceable to any work done by Welt. As indicated earlier, Welt disputes this position.[2] At this meeting, Koehring

---

1. A copy of this memorandum is attached as Appendix A.

2. One of the problems that had arisen in the 1971 negotiations with Poland was the difficul-

ty of the Poles in generating "hard currency" with which to pay for Koehring's machines. In April, 1971, Koehring had rejected a proposal whereby sales of Polish equipment to Koehring would be used to generate the necessary cash.

and the Polish government entered into another agreement to agree.

*April, 1972.* At this final round of negotiations, which Welt did not attend, Koehring and the Polish government entered into a sales agreement which also gave the Poles exclusive rights to produce Koehring's M250H hydraulic excavator.

In October, 1972, Welt began to demand payment of commissions which he believed Koehring owed him as a result of the cooperation agreement being consummated. When Koehring refused to pay, this suit was filed.[3] The case is now before the Court on defendant's motion for summary judgment on all counts of the complaint.

■ In a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, "[t]he party moving for summary judgment has the burden of clearly establishing the non-existence of any genuine issue of fact that is material to a judgment in his favor." *Cedillo v. International Association of Bridge & Structural Iron Workers, Local Union No. 1,* 603 F.2d 7 at 10 (7th Cir. 1979). "If . . . any doubt remains as to the existence of a genuine issue of material fact, such doubt must be resolved against the movant for summary judgment and the motion for summary judgment must be denied." *Moutoux v. Gulling Auto Electric, Inc.,* 295 F.2d 573, 576 (7th Cir. 1961). "[U]nless such evidentiary matters submitted in a particular case clearly show 'that there was no issue of fact to be tried,' the court 'is not permitted to try on the affidavits submitted an issue of fact which is presented by the pleadings.'" *Id.* Moreover, "as a general principle, questions of motive and intent are particularly inappropriate for summary adjudication." *Cedillo,* at 11. Of course, even if the moving party can show an absence of factual

dispute, he still must demonstrate that he is entitled to a judgment as a matter of law. It is in light of these principles that the Court will address the motion as it pertains to each count of the complaint.

## COUNT II

In its motion for summary judgment, the defendant argues that under the written accord set forth in Count II, the plaintiff was required to perform four duties: (1) make available to Koehring a vehicle for the sale of Polish goods; (2) provide its good offices to sell Polish-made goods; (3) determine in detail the market chances of some of the Polish-made products; and (4) provide Koehring with a clear statement of sales opportunities to enable Koehring to finalize negotiations with Poland concerning a sales accord. Koehring asserts that Welt's failure to perform these contractual obligations relieves it of any duty to pay a commission, either on sales of machines to Poland or on sales of Polish goods abroad.

Welt, on the other hand, contends that the commission on sales of goods to Poland was not contingent on his performance of the contractual obligations. Rather, he claims that the portion of the confirmatory memorandum relating to the commission on sales to Poland merely was an incorporation of the pre-existing oral agreement. Thus, any nonperformance on his part would not affect his entitlement to the commission on sales to Poland. Moreover, Welt disputes Koehring's characterization of his contractual obligations under this accord, asserting that he in fact did fulfill those duties set forth in the agreement of May 25, 1971. Finally, Welt argues that even if he did fail to perform the contractual obligations, this nonperformance was excused by Koehring's

---

In 1972, Koehring devised an alternative plan which would eliminate this problem. Under this arrangement, Koehring would license the Poles for the exclusive production of the M250H hydraulic excavator. The Poles would then sell the excavator to Koehring's West German subsidiary, with the cash from those sales providing the "hard currency" necessary for the sale of Koehring goods to Poland.

Koehring argues that this plan was totally independent of the earlier negotiations, and that Welt's earlier efforts were irrelevant to 1972 negotiations. Welt, on the other hand, asserts that these negotiations still were traceable to his introductions, contacts, and other services performed in 1970 and 1971.

**3.** Jurisdiction is vested in this Court under 28 U.S.C. § 1332(a).

failure to lend support as required by the agreement.

There is no dispute that the May 25, 1971, memorandum confirmed an agreement between Welt and Koehring—the parties are in accord on this point. The threshold question, however, is which interpretation of the contract the parties agreed to. There are three factual disputes relevant to the claim in Count II: (1) was the payment of the commission on sales of machines to Poland conditioned on Koehring's performance of the other aspects of the contract; (2) what duties did the contract require Welt to perform, and did Welt perform them; and (3) was Welt's alleged nonperformance excused due to Koehring's failure to fulfill its own obligations under the agreement.

■ The question of whether the terms of a contract are ambiguous is a matter of law to be decided by the trial judge. *Tondre v. Pontiac School District No. 105*, 33 Ill.App.3d 838, 342 N.E.2d 290 (5th Dist. 1975). The language of the confirmatory memorandum of May 25, 1971, is not clear enough to enable the Court to determine the answer to the first question outlined above solely by reference to the four corners of the document. It is not clear that payment of commissions on sales of machines to Poland was premised on performance by Welt of the obligations set forth in the May 25, 1971, memorandum. The memorandum states that Welt would perform his duties "in recognition of" the receipt of commissions. The use of the term "in recognition of" does not necessarily mean that performance was a *quid pro quo* for payment. The same term was used elsewhere in the memorandum in a non-mandatory sense.[4] Moreover, the fact that a separate commission would be paid for the sales of Polish goods resulting from Welt's efforts suggests that commission on the sale of machines to Poland may have been totally separate from the commission on sales of Polish-made goods. *See Keeler v. Clifford*, 165 Ill. 544, 547, 46 N.E. 248 (1897).

In any event, the Court believes it will be necessary to adduce extrinsic evidence in order to determine which reading of the contract will govern. Where such facts, or the constructions to be drawn therefrom, are controverted, a jury must be permitted to determine what inferences will be drawn. *Lichtenstein v. Anvan Co.*, 62 Ill.App.3d 91, 19 Ill.Dec. 296, 378 N.E.2d 1171 (1st Dist. 1978). Therefore, it would be inappropriate to grant summary judgment on this issue.

■ Similarly, it would be improper to grant summary judgment on the issue of Welt's purported failure to perform his contractual obligations. There is a colorable dispute as to the precise nature of Welt's duties under the agreement. In light of the fact that the memorandum of the oral agreement was prepared and signed only by the defendant, the Court is reluctant to rely solely on this document to determine the duties required of Welt. Furthermore, there is severe disagreement as to what performance of certain duties entailed. In essence, Koehring argues that Welt's nonperformance can be inferred from his failure to successfully promote the sales of Polish-made goods. Welt counters that he faithfully performed his end of the bargain. Whether Welt actually had to succeed in his effort to promote the sale of Polish goods in order to fulfill his performance obligation is a disputed question of fact that should be resolved by a jury. Finally, there is the question of whether Koehring failed to cooperate with Welt in the latter party's efforts to perform the contract. The affidavits show that there was little interaction between the parties after May, 1971. A jury should be allowed to determine whether there was a failure by defendant to perform the contract. Accordingly, the motion for summary judgment should be denied in its entirety as it relates to Count II.

### COUNT I

In its motion for summary judgment, Koehring argues it is entitled to judgment

---

4. Compare the use of the term "in recognition of" in paragraph 3 with its use in the introductory paragraphs of the memorandum.

on this count since there is no affirmative evidence of an oral agreement in the spring of 1970. Koehring also argues that if the contract did exist, Welt was not the "procuring cause" of the ultimate agreement and thus was not entitled to a commission. Finally, Koehring argues that recovery under a theory of oral contract is barred by both the merger clause in the May 25, 1971, memorandum and the Statute of Frauds.

The Court has little doubt that there was an oral contract between the parties dating back to the spring of 1970. Both sides have conceded to this fact at various times.[5] The only question concerns the terms of that agreement. Koehring argues that it retained the plaintiff on a straight fee basis for his assistance on the trips to the Soviet Union and eastern Europe in 1970. Welt, on the other hand, argues that he was retained on a fee plus commission basis, with a commission coming due if his efforts in making contacts and providing other services culminated in a contract.

In light of this dispute and the conflict evident in the affidavits, it is impossible to determine on summary judgment the scope of the contract between Koehring and Welt. It also is impossible to determine whether, if a contract on commission basis did exist, it required Welt to be the procuring cause of a sales agreement, or merely that the contract be traceable to Welt's efforts. Even were these issues capable of resolution, the Court could not determine on the basis of the affidavits whether Welt's performance entitled him to compensation. A major area of dispute between the parties involves the question of whether the April, 1972, sales agreement with Poland was traceable to the earlier negotiations in 1970 and 1971, of which Welt was a part. This is precisely the type of factual dispute that is inappropriate for summary resolution.

Whether or not the merger clause in the last paragraph of the May 25, 1971, memo-

randum precludes recovery under an earlier oral agreement is a close question. Under Illinois law, this clause on its face seems adequate to require judgment for the defendant on Count I. *Martindell v. Lake Shore National Bank*, 15 Ill.2d 272, 154 N.E.2d 683 (1958); 12 I.L.P. 328. In this case, however, there is some question as to whether the memorandum is an accurate representation of the agreement between the parties. It was a unilateral document prepared and assigned by the defendant's officer alone. In this situation, the Court believes it would be inappropriate at this time to deprive plaintiff of a chance to present his theory in Count I to a jury on the sole basis of this clause.

■■ As to the Statute of Frauds defense, it is unclear whether this contract could have been performed within one year. Illinois law requires affirmative proof that an agreement was not to be performed within a year in order to bring an oral agreement within the Statute of Frauds. *Hall v. Gruesen*, 22 Ill.App.2d 465, 161 N.E.2d 345 (1st Dist. 1959). Moreover, the plaintiff asserts that he fully performed his obligations under the oral agreement, which also would be sufficient to render the Statute of Frauds inapplicable. *Western Union Telegraph Co. v. Chicago & P. R. Co.*, 86 Ill. 246 (1877). As indicated above, the question of Welt's performance remains a disputed question of fact. On the present state of the facts, the Court cannot say that the Statute of Frauds bars Count I as a matter of law.

## COUNT III

In seeking summary judgment on the implied contract and quantum meruit claims,[6] Koehring makes essentially the same arguments as it did with respect to Count I. Specifically, Koehring alleges that (1) the agreement concerning the sale of machines

---

5. *See* Defendant's Memorandum in Support of Koehring's Motion for Summary Judgment at 3–4; Plaintiff's Memorandum in Response to Defendant's Motion for Summary Judgment at 9–11.

6. Although the defendant argues to the contrary, the Court finds that Count III of the amended complaint is sufficient to state claims under quantum meruit as well as under implied contract theory.

to Poland was unrelated to Welt's efforts; (2) the existence of express agreements between the parties precludes recovery under an implied contract theory; and (3) the count is precluded by the Statute of Frauds.

Only the second point, concerning the effect of express agreements between Welt and Koehring, merits significant attention.[7] The parties agree that there exist express agreements governing the issues in this case, although they disagree as to the specifics of those agreements. Insofar as Count III alleges a contract implied in fact,[8] the motion for summary judgment must be granted. Under Illinois law, there can be no contract implied in fact if there exists an express contract between the parties covering the same subject. *Walker v. Brown*, 28 Ill. 378 (1862). The existence of an earlier express contract in this case precludes recovery under this theory.

Insofar as Count III seeks relief under the theory of quantum meruit, however, a different result obtains. A quantum meruit, or contract implied in law, theory does not recognize that there in fact has been a contractual agreement between the parties. Rather, it is a device by which the law imposes quasi-contractual liability on an unwilling party in order to prevent unjust enrichment. *Bau v. Sobut*, 50 Ill. App.3d 732, 8 Ill.Dec. 486, 365 N.E.2d 724 (1st Dist. 1977). Under this theory, the existence of a prior agreement is irrelevant. What Welt seeks in this Count is not the award of damages which he believes are due him as a result of Koehring's alleged breach of contract, but rather, the just compensation for the value of the services he rendered Koehring. This has no relation to

any other agreement; indeed, a jury could find that Welt failed to perform his duties as contemplated by the agreement(s), and still find that he is entitled to some relief under a quantum meruit theory. Thus, the Court finds that there should be a trial on Count III as it relates to the theory of quantum meruit.

In summary, the motion for summary judgment is granted in favor of defendant on Count III as it relates to the contract implied in fact theory. In all other respects, the motion for summary judgment is denied. It is so ordered.

APPENDIX A

May 25, 1971

Mr. Leo G. B. Welt
Welt International Management Service
112 South Michigan Avenue
Chicago, Illinois 60603

SUBJECT: AGREEMENT BETWEEN WELT INTERNATIONAL AND KOEHRING RELATING TO POLISH BUSINESS

Dear Mr. Welt:

This is to confirm our conversation of this morning.

It is recognized that our business opportunities in Poland strongly hinge on our ability to conclude a Cooperation Agreement including selling machinery to Poland, purchasing parts, components and machinery from Poland and concluding a License Agreement.

In recognition of the problems involved, particularly in connection with our purchasing products from Poland we have agreed as follows.

---

7. As indicated above, there remains a significant factual dispute as to whether the April, 1972, sales agreement with Poland was related to Welt's efforts. The Statute of Frauds argument is irrelevant to both the quantum meruit and contract implied in fact claims. Both theories involve the judicial application of contractual or quasi-contractual obligations in the absence of a written agreement. Therefore, it would be nonsensical to preclude the claims in Count III on the basis that there is no written accord.

8. Under Illinois law, a "contract implied in fact is one arising where there are facts and circumstances from which, in connection with applicable legal principles, a meeting of the minds can be inferred or deduced." 12 I.L.P. Contracts § 4 at 186.

1. On complete machinery sold by Koehring Company to Bumar (this does not apply to the sale of parts and components in support of the License Agreement) Welt International will receive 5% commission on the net selling price of Koehring to Bumar.

2. Welt International will not receive commission on the sale of components and parts under the License Agreement; and Welt International will not participate in any way in the payment of royalties.

3. In recognition for a financial participation as listed under 1. and 2. above, Welt International agrees to make available to Koehring the vehicle to sell Polish built products in the western world. The sale of this equipment to be done through the good offices of Welt International but with whatever support Koehring can lend. It will be such that first proceeds of such sales will go to compensate Koehring for any open accounts with Bumar. After that Koehring and Welt International will share the proceeds of sales from Poland into the western world on a 50–50 basis.

It is understood that Welt International will now set up a program to determine in more detail the market chances of some of the Polish built products. As soon as this work has been done, a clear statement on sales opportunities will be made by Welt International so as to enable Koehring to finalize its negotiations with Bumar.

Finally, it has been agreed that Koehring may, independent from the Welt International effort, purchase parts, components and machinery from Bumar for Koehring's own use or for sale through Koehring's construction equipment distribution system without any participation whatsoever from Welt International.

It is hoped that by this Agreement a way has been found to conclude a final agreement between Koehring and Bumar.

This Agreement is the only Agreement between Welt International and Koehring pertaining to business in Poland. Any other Agreement between Welt International and Koehring pertaining to other eastern block countries is not valid as it relates to Poland.

DOES NOT APPLY TO POLAND.

Sincerely yours,

(s) Roger R. Regelbrugge
Vice President
International Operations Group

RRR/mc