Virginia Van Cura, Helen Donna Ott and George Blozis, Executor Under the Last Will and Testament of Pauline Drangelis, Deceased, Plaintiffs-Appellees, v. Kazys Drangelis, Defendant-Appellant.

Gen. No. 48,869.

First District, Third Division.

October 2, 1963.

Edward Stasukaitis, of Chicago (Herbert M. Wetzel, of counsel), for appellant.

Tage Joranson, Darwin P. Kal and Harry S. Jacobs, all of Chicago, for appellees.

JUSTICE DEMPSEY delivered the opinion of the court.

In October 1950 Kazys Drangelis, a doctor of dental surgery, and Pauline Paukstis, a widow, entered into an antenuptial agreement concerning the property of Mrs. Paukstis. They were married the next day. In April 1961 Pauline Paukstis Drangelis died. Her will, dated January 22, 1952, left her real and personal property to the daughters of her first marriage, the plaintiffs Virginia Van Cura and Helen Donna Ott.

In July 1961 Drangelis filed in the Recorder's Office a declaration to take dower in his wife's real estate, and filed in the Probate Court his renunciation of her will.

Thereafter the daughters and the executor of their mother's will brought an action against Drangelis for declaratory judgment. The complaint asserted that an actual controversy existed with respect to the construction of the antenuptial agreement and that a determination of this controversy was necessary to establish the parties' interest in the decedent's property. The plaintiffs prayed that the agreement be declared valid and that Drangelis be found to have no right in the decedent's estate. Drangelis answered the complaint, admitted the agreement but denied that by it he relinquished all interest, title or claim to the estate of his wife, acknowledged the existence of the controversy and prayed that the court order the executor to assign him dower and homestead rights and to allow him an award as surviving spouse. He also filed a counterclaim which related the steps he had taken in the Recorder's Office and the Probate Court, stated that he was entitled to dower, asked that it be assigned to him and that he be allowed damages of $500 because of the failure of the plaintiffs to assign dower to him. The plaintiffs thereupon moved to strike the counterclaim and moved for a summary decree on the complaint and answer. Both motions were allowed and Drangelis has appealed from the order denying his motion to vacate.

At the time of the agreement Mrs. Paukstis owned and resided in a two-story building at 2642 West 63rd Street, Chicago. She also had an interest in a building containing a tavern and an apartment at 4171 South Halsted Street, Chicago. After the marriage she and the defendant lived in the 63rd Street building. Her will devised this property to her daughter Virginia.

207

In March 1952 she and her daughter Helen, as joint tenants, leased the Halsted Street building for a term of 36 years. Her interest in the Halsted Street property was devised to Helen.

In an affidavit accompanying his answer, Drangelis said that the agreement had been prepared by Mrs. Paukstis' attorney, that he was not represented by counsel and that the agreement was intended to apply to the Halsted Street property only and not to the 63rd Street property. He makes the latter point and the further one that a summary decree should not have been granted because of factual issues, as the points relied upon for reversal.

The agreement is as follows:

"ANTENUPTIAL AGREEMENT.

"KNOW ALL MEN BY THESE PRESENT, This agreement made and entered into this 24th day of October, 1950, by and between Pauline Paukstis and Kazys Drangelis, both of the City of Chicago, Cook County, Illinois.

"WITNESSETH:

"WHEREAS, the said parties have agreed and contemplate a marriage and the solemnization thereof, each to the other, and with one consideration have agreed;

"1. That for and in consideration of the sum of Ten ($10.00) Dollars, to him in hand paid, and the further consideration of the marriage intended between said Pauline Paukstis and said Kazys Drangelis, Kazys Drangelis agrees to, and does hereby waive, relinquish and bar all his rights, title and interest that shall, or may be here-after vested in him, as the husband or surviving spouse of said Pauline Paukstis, in and

208

to all personal property or effects now owned or in the possession and control of said Pauline Paukstis.

"It is desired by said parties to secure to said Pauline Paukstis full control and right to dispose of such property according to her will and pleasure, to descend to her child or children at her death, now, therefore, it is agreed that the said Pauline Paukstis, after said contemplated marriage shall have and hold and retain all the property which she now possesses, in her own right the same as if she had not married, particularly to wit: the brick building and contents thereof situated on the land commonly known as 4171 South Halsted Street, Chicago, Illinois, and described as:

"Lot Twenty-seven (27) in Block thirteen (13) in Superior Court Subdivision of the West half ($W\frac{1}{2}$) of the North West quarter ($\frac{1}{4}$) of Section four (4) Township thirty-eight (38) North Range fourteen (14) West of the Third Principal Meridian, in Cook County, Illinois.

"And by reason of the premises, said Kazys Drangelis hereby waives, relinquishes, conveys and sets over all interest, title or claim which he may or might acquire by marriage to said Pauline Paukstis.

"IN WITNESS WHEREOF, the said parties have hereunto set their hands and seals this 24th day of October A. D. 1950.

(sig. illegible)

Pauline Paukstis (seal)
Kazys Drangelis (seal)

In the presence of
Joseph L. McCarthy."

It is to be noted that the paragraph bearing the number 1. states that Drangelis waives his rights to

209

all *personal* property, and that the following paragraph states that it is the desire of the parties to secure to Mrs. Paukstis full right to dispose of *such* property ( i. e. *personal* property); but the same paragraph states it is agreed that she shall retain *all* the property she possesses in her own right, and the next to last paragraph states that Drangelis waived *all* interest he might acquire by marriage. It also is to be noted that the agreement refers to the Halsted Street property but makes no reference to the 63rd Street property.

The principles of construction which govern contracts generally are applicable to antenuptial agreements. Guhl v. Guhl, 376 Ill 100, 33 NE2d 185. However, the property rights of a spouse acquired through the marital relation will not be taken away by an antenuptial agreement unless the intention to do so is clearly apparent. Seuss v. Schukat, 358 Ill 27, 192 NE 668. In ascertaining the intention of the parties, the entire agreement, its scope and purpose and the attendant circumstances at the time of its execution should be considered. Collins v. Phillips, 259 Ill 405, 102 NE 796.

By the antenuptial agreement, Drangelis relinquished certain rights, acquired by him through marriage, in the property of his intended spouse. But the agreement is confusing; it is difficult to tell just what was meant. Was his waiver confined to personal property, did it include real property or was it limited to the Halsted Street property as he contends? There is little in the agreement itself to support the latter contention. It ignores even the unequivocal portions of the agreement wherein he waived all his rights in the personal property possessed by Mrs. Paukstis. The emphasis of the agreement is clearly on personal property but the reference to *all* property and the waiver of *all* interest which might be acquired by marriage

dilutes the emphasis and strongly indicates that the agreement was not meant to be restricted to personal property.

The nature of Mrs. Paukstis' interest in the Halsted Street property at the time of the agreement might throw some light on this problem. We do not know what this interest was. The pleadings are of minimal help. The antenuptial agreement refers to "the property which she now possesses . . . particularly to wit: the brick building and contents thereof situated on the land. . . ." From this reference it would appear that she distinguished the ownership of the building from that of the land, but we cannot tell what was the nature of that ownership. One and one-half years after signing the antenuptial agreement she and her daughter, Helen Ott, according to the complaint, leased the land, "improved with a building containing one store and one apartment, for a term of 36 years and 4 months, beginning on January 1, 1953. . . ." What was her interest on the day before her marriage? Was it in the contents and fixtures only or was it in a long-term leasehold on the land and building which was about to terminate? Was the interest in personal property, or in a chattel-real or in real property?

If her interest in the Halsted Street property was in personal property only—this would lend some support to interpreting the agreement as applying just to personal property. On the other hand, if her interest was in a chattel-real or in real property this would enhance the interpretation of the document as applying to real as well as to personal property.

■ The antenuptial agreement is ambiguous. In our opinion extrinsic evidence is necessary to ascertain its true intent. Evidence clarifying her interest in the Halsted Street property would go a long way toward understanding what was meant.

■ Although the issues of the case could have been readily determined under the complaint for declaratory judgment, the plaintiffs filed a motion for summary judgment. In support of their motion to strike the counterclaim, they filed an affidavit by their attorney. Thus, there were two affidavits, this one and that of the defendant, and the pleadings before the court for consideration under the motion for summary judgment. The defendant's affidavit stated that it was his understanding that the agreement was for the purpose of avoiding questions that might arise in negotiating the lease on the Halsted Street property. The attorney's affidavit asserted that Drangelis relinquished the rights in all the property of Mrs. Paukstis which he might acquire by marriage. However, both affidavits were incompetent. The incompetency of the defendant's affidavit was apparent on its face: he was a party defending a suit brought by the executor of the estate. Ill Rev Stats 1961, c 51, § 2. We conclude that the court did not consider this affidavit. The incompetency of the affidavit submitted by the plaintiffs' attorney was also apparent on its face. It gave his interpretation of the antenuptial agreement and the conclusions he drew therefrom. This affidavit was mentioned specifically in the decree as having been considered by the court.

■ Rule 15 of the Supreme Court (Ill Rev Stats 1961, c 110, § 101.15(1)) states that summary judgment affidavits shall be made upon the personal knowledge of the affiant, shall not consist of conclusions but of facts admissible in evidence and shall affirmatively show that the affiant, if sworn as a witness, could competently testify to the facts set forth in the affidavit. There was nothing in the attorney's affidavit to show that he could competently testify to the facts stated therein concerning the defendant's agreement with Mrs. Paukstis that she should retain the real

estate and all the property she possessed before their marriage. This portion of the affidavit must be disregarded by this court and should not have been considered by the trial court. Winger v. Richards-Wilcox Mfg. Co., 33 Ill App2d 115, 178 NE2d 659; Tansey v. Robinson, 24 Ill App2d 227, 164 NE2d 272.

The summary judgment decree and the order striking the counterclaim are reversed. The cause is remanded for further proceedings and further proof, if such is available and the parties so desire, consistent with the views expressed in this opinion.

Reversed and remanded with directions.

SCHWARTZ, PJ and McCORMICK, J, concur.