LAWRENCE SMOTHERS, Plaintiff-Appellant, *v.* DR. EARLEY BUTLER *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 78-2

Opinion filed August 8, 1979.—Rehearing denied October 12, 1979.

A. J. Hardiman, Ltd., and Baraz and Sotos, both of Chicago (A. J. Hardiman, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban and Fuller, of Chicago (John G. Langhenry, Jr., Stanley J. Davidson, and Michael J. Morrissey, of counsel), for appellee Mary Thompson Hospital.

Laurel G. Sandler, of Chicago, for appellee Dr. Earley Butler.

Mr. JUSTICE RIZZI delivered the opinion of the court:

This is a medical malpractice action brought against defendants Mary Thompson Hospital and Dr. Earley Butler. The defendants filed motions for summary judgment; affidavits, deposition transcripts, interrogatories, and other documents were filed by the parties. The trial court granted the motions for summary judgment and the plaintiff appeals. We reverse.

The plaintiff was admitted as a patient at Mary Thompson Hospital in Chicago, Illinois, on June 14, 1973. Dr. Butler was his attending physician; he ordered that the plaintiff be given intravenous fluids every six hours. The intravenous feeding, administered by an I.V. therapist, commenced on June 15, 1973, and was discontinued on June 17, 1973. The procedure for the intravenous feeding included the insertion of a flexible catheter tubing, commonly referred to as an intravenous pressure

catheter, into the plaintiff's arm. Prior to the commencement of the intravenous feeding, an X ray of the plaintiff's chest was taken by a radiologist at the hospital.

On September 4, 1973, the plaintiff was again hospitalized at Mary Thompson Hospital. Although no intravenous fluids were given during this hospitalization, the plaintiff's chest was X-rayed.

On August 8, 1974, the plaintiff was hospitalized at St. Mary of Nazareth Hospital and his chest was X-rayed again. The X rays showed a radiopaque catheter fragment approximately 12 to 15 centimeters in length (4½ to 5½ inches) in the right atrium of plaintiff's heart. An attempt to remove the catheter was unsuccessful. The radiopaque catheter fragment lodged in plaintiff's heart is the type used for intravenous fluids; the plaintiff did not have any intravenous feeding after the June 15-17, 1973, procedure at Mary Thompson Hospital.

After the lawsuit was filed, the defendants had a radiologist review the X rays of plaintiff's chest which were taken at Mary Thompson Hospital on June 15, 1973, and September 4, 1973. The radiologist stated that there is no evidence of an intravenous catheter shown on those X rays.

The plaintiff had the chest X rays examined by Dr. H. C. Cohen of the Cardiovascular Institute of Michael Reese Hospital in Chicago. He stated that the radiopaque catheter present in the plaintiff's heart is "compatible with one of many intravenous radiopaque catheters which have been used for intravenous fluids" for several years. The doctor also said: "For instance, presently there is an intravenous catheter available manufactured by the Desert Pharmacutical Company * * *. It is 8″ (approximately 20 centimeters) long * * *." The doctor then stated that the catheter in the present case could have broken off in the plaintiff's arm before the September 4, 1973, chest X ray was taken and migrated to the heart at a later date. The doctor concluded that "the presence of such a catheter in the plaintiff's heart implies an inadvertent error in the management of an intravenous catheter" sometime before the chest X ray taken at St. Mary of Nazareth Hospital on August 8, 1974.

■■ In determining whether a genuine issue of fact exists in this case, we must construe the pleadings, depositions and affidavits most strictly against the movant and most liberally in favor of the opponent of the motion for summary judgment. This is so because summary judgment must be free from doubt before it is entered. (*Kolakowski v. Voris* (1979), 76 Ill. App. 3d 453, 457, 395 N.E.2d 6, 9.) If the facts admit of more than one conclusion or inference, including one unfavorable to the moving party, the motion for summary judgment should be denied. *Presto Manufacturing Co. v. Formetal Engineering Co.* (1977), 46 Ill. App. 3d 7, 10, 360 N.E.2d 510, 511.

The defendants contend that they are entitled to summary judgment because "the catheter did not enter the plaintiff's body during his hospitalization at the hospital." This conclusion is premised on the fact that the intravenous feeding at defendant's hospital occurred in June 1973 and the chest X rays taken in September 1973 do not demonstrate the existence of a catheter in the plaintiff's heart. The defendants' conclusion is untenable because the plaintiff's expert states that the catheter could have broken off in the arm before the September 4, 1973, chest X ray was taken and migrated to the heart at a later date. Such an occurrence would reasonably account for the fact that the catheter did not appear in the chest X ray taken on September 4, 1973.

■■■ The defendants also argue that the plaintiff cannot "prove" that the catheter in question was used during the period between June 15-17, 1973, because the plaintiff received intravenous feeding when he was hospitalized at other hospitals in 1966 and in May 1973. However, prior to administering the intravenous feeding on June 15, 1973, the defendants had the plaintiff X-rayed and those X rays do not show the presence of a catheter. Thus, a person could infer that the broken catheter was not present in the plaintiff before the June 15, 1973, intravenous feeding. Further, a person could infer that the defendants would have discovered the broken catheter if it was present in the plaintiff's arm or heart before they administered intravenous feeding to him on June 15, 1973. These are reasonable inferences which may be drawn from the undisputed facts. In this regard, courts have construed section 57 of the Civil Practice Act, dealing with summary judgment, "to mean that in determining if there is a genuine issue as to any material fact, inferences may be drawn from the facts which are not in dispute, and if fair-minded persons could draw different inferences from these facts then a triable issue exists. [Citations.]" (*Lumbermens Mutual Casualty Co. v. Poths* (1968), 104 Ill. App. 2d 80, 88, 243 N.E.2d 40, 45.) It is only when the undisputed facts are susceptible to but a single inference that the issue becomes one of law. (*Clausen v. Ed Fanning Chevrolet, Inc.* (1972), 8 Ill. App. 3d 1053, 1057, 291 N.E.2d 202, 205.) Plainly, it is not necessary that a plaintiff, in order to successfully oppose a motion for summary judgment, negate every inference which might be propounded by the defendant as to what might have been the cause that would excuse the defendant of its alleged negligence. (*Cf. Newman v. Spellberg* (1968), 91 Ill. App. 2d 310, 322, 234 N.E.2d 152, 158.) Under the undisputed facts here, since different reasonable inferences, rather than a single inference, may be drawn as to whether the catheter in question was used during the period between June 15-17, 1973, the defendants' argument is without merit.

■■ The defendants next contend that they are entitled to summary judgment based on the affidavit of Ronald E. Bartlett, dated June 14,

1977. The affidavit states that he is the administrator of Mary Thompson Hospital.[1] It also states that Mary Thompson Hospital does not use eight-inch catheter tubing for the administration of I.V. feedings. But the affidavit does not state that at the time of the occurrence such a catheter was not being used by the hospital for such purposes. Nor does the affidavit state that catheters of approximately the same length as the one in plaintiff's heart were not used at that time. Clearly, Dr. Cohen's statement refers to an 8″ catheter merely as an *instance* or example of a catheter that is presently in existence which would be compatible with the catheter fragment in the plaintiff's heart. Dr. Cohen's statement does not mean that other similar catheters of different compatible lengths were not used at the time. We believe a fair-minded person could reasonably infer that the catheter in the plaintiff's heart was the catheter inserted in the June 15-17, 1973, intravenous feeding, regardless of the statements appearing in the affidavit of Bartlett concerning the present procedures followed by the defendant hospital.

■■ The affidavit of Bartlett also concludes from *his review* of the hospital records that no procedure was performed in which an 8″ catheter was introduced into the plaintiff's body. Since Bartlett is not a medical doctor, his conclusions involving what was medically done to the plaintiff would not be admissible in evidence. Supreme Court Rule 191 states that summary judgment affidavits shall be made upon the personal knowledge of the affiant, shall not consist of conclusions but of facts admissible in evidence and shall affirmatively show that the affiant, if sworn as a witness, could competently testify to the facts set forth in the affidavit. There is nothing in Bartlett's affidavit to affirmatively show that he could competently testify as to what was medically done to the plaintiff in June 1973. This portion of the affidavit must, therefore, be disregarded by this court and should not have been considered by the trial court. *Van Cura v. Drangelis* (1963), 43 Ill. App. 2d 205, 212, 213, 193 N.E.2d 201, 204.

Dr. Butler also contends: "Even assuming that plaintiff could establish that the catheter entered plaintiff's body during hospitalization, Dr. Butler would not be responsible for improper acts of the I.V. technician who administered that intravenous feeding to plaintiff." This argument totally ignores the fact that the doctor is being sued in a separate count for his own purported negligence as opposed to merely the alleged negligence of the hospital personnel. Dr. Butler was the plaintiff's attending physician; the plaintiff was, therefore, in the hospital under his care. As the attending physician, Dr. Butler ordered that the

---

[1] Plaintiff argues that the affidavit should be stricken because Mr. Bartlett does not state he was the administrator at the time of the alleged occurrence. Although the defendants do not dispute the plaintiff's statement as to Bartlett's status, our review of the record reveals that Bartlett answered an interrogatory that he was the administrator at that time. We find the plaintiff's argument on this point unavailing.

plaintiff be given intravenous feeding. The intravenous feeding was an ongoing medical procedure. During the procedure, the plaintiff's arm became swollen; as a result, the intravenous feeding device was removed and reinserted. At that time, Dr. Butler was called in and he asked the plaintiff if the I.V. was "okay" and whether it was giving him any trouble. Thus, Dr. Butler was aware that there may have been a problem concerning plaintiff's intravenous feeding.

■■ ■ Under these circumstances, Dr. Butler had a duty to exercise diligence in attending to his patient. Whether he breached that duty by not monitoring the ongoing medical procedure is a question of fact. Contrary to Dr. Butler's contention, the mere fact that a patient is in a hospital and receiving care from hospital personnel does not in itself absolve a physician from his duty of attending to his patient with diligence. During the existence of the relationship of physician and patient, a physician is under a duty to give to the patient all necessary care as long as the case requires attention, and a lack of diligence in attending to the patient after assumption of the case renders the physician liable for malpractice.[2] See Annot., *Liability of Physician for Lack of Diligence in Attending Patient*, 57 A.L.R.2d 364, 388 (1958 & Supp. 1976 & Supp. 1979) and cases cited therein. This principle is supported by the Illinois case of *Church v. Adler* (1953), 350 Ill. App. 471, 113 N.E.2d 327, where the court held that a malpractice suit may be based upon the negligence of a physician in failing to care for and treat a patient after an operation, and that a physician is not the sole judge of the frequency and necessity of his calls in attending to his patients when the issue is whether he was negligent. 350 Ill. App. 471, 475, 479, 482, 113 N.E.2d 327, 329, 331, 332.

The question in this case is whether an attending doctor failed to give proper attention to his patient. This type of case is distinguishable from those involving claims that a physician made an error in diagnosis or that he did not possess the necessary skill, knowledge, or experience in his profession. Here, we are primarily concerned with the alleged liability of a physician based on omissions in the course of applying the proper treatment, rather than a claim that the treatment itself was improper. See Annot., 57 A.L.R.2d 364, 384.

Another distinguishing feature of this case is that an ongoing medical procedure was involved as opposed to a single act that was to be performed by hospital personnel. The law is clear that a physician cannot be held liable for the acts of hospital personnel over which he had and could have no control. (*Graham v. St. Luke's Hospital* (1964), 46 Ill. App.

---

[2] The complaint does not use the term "lack of diligence" but rather uses the words "negligent acts by ° ° ° omission in the medical care and treatment to the plaintiff ° ° °." In construing the pleadings most liberally in favor of the opponent of the motion for summary judgment, we believe the complaint sufficiently charges the defendant with lack of diligence.

2d 147, 159, 196 N.E.2d 355, 361.) *Graham* involved the single act of an injection by a nurse. Other examples of single acts by hospital personnel might include blood tests, blood counts and X rays. These instances are clearly distinguishable from the present occurrence, which involves an ongoing medical procedure. When, as in this case, the attending doctor orders an ongoing medical procedure to be performed on his patient, the doctor himself has a duty to exercise diligence in attending to his patient. This is only reasonable. Certainly, the hospitalized patient expects that his attending physician will exercise diligence under the circumstances, and not that the hospital nurses or other employees will act solely on their own responsibility. The special relationship between the patient and his attending doctor and plain common sense dictate that such an expectancy is warranted and must be fulfilled. *Cf. Church v. Adler* (1953), 350 Ill. App. 471, 481, 482, 113 N.E.2d 327, 332; *Newman v. Spellberg* (1968), 91 Ill. App. 2d 310, 322, 234 N.E.2d 152, 158.

In this case, the plaintiff's expert stated that the presence of the catheter in the plaintiff's heart implies an error in the management of an intravenous catheter. Under the circumstances that appear in the record, fair-minded persons could draw different inferences as to whether the error was caused by an employee of Mary Thompson Hospital during the June 15-17 intravenous feeding in 1973, and as to whether there was a lack of diligence by Dr. Butler in attending to his patient. Thus, triable issues of fact exist as to both defendants which preclude summary judgment.

The summary judgment in favor of the defendants is, therefore, reversed and the case is remanded to the trial court.

Reversed and remanded.

SIMON, P. J., and McNAMARA, J., concur.