ELMER P. BARNES, Plaintiff-Appellant, *v.* W. A. RAKOW *et al.*, Defendants.
(JOHN MARNUL *et al.*, Defendants-Appellees.)

First District (1st Division)   No. 78-2047

Opinion filed October 22, 1979.

Kenart M. Rahn, of Chicago, for appellant.

James A. Fletcher and Pamela Bristow Strobel, of Chicago (Isham, Lincoln & Beale, of counsel), for appellees.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff, Elmer P. Barnes, hired defendants, John Marnul and Thomas Popke, individually and doing business as Jens K. Doe Survey Service, to make surveys of three different three-acre tracts contained in a larger parcel of realty owned by plaintiff. Plaintiff subsequently brought this action against defendants, among others, alleging defendants had been negligent in failing to discover and inform plaintiff during the course of their work that the master survey prepared by other surveyors overstated the total acreage contained in the larger parcel. Defendants' motion for summary judgment was granted, and plaintiff appeals. Plaintiff's claims against the other persons named in his complaint are not before us on this appeal.

Plaintiff is a licensed real estate broker. In 1968 he obtained the listing on a vacant parcel of land in Streamwood, Illinois. The owner of the property, Henry Stueve, showed plaintiff at this time a survey of the property which had been prepared earlier for Stueve by W. A. Rakow and Associates, licensed surveyors. This survey, dated February 13, 1967, stated that the area of the property was 30.062 acres.

Plaintiff, as cooperating broker, arranged for Stueve to sell the property on November 1, 1969, to Attilio R. DiBattista, George Durante and Ernest O. Cairo. The purchase price was $14,000 per acre, for a total price of $420,000 for 30 acres. Subsequently, on or about June 1, 1970, plaintiff purchased from these three buyers a one-quarter interest in their contract with Stueve.

The contract which plaintiff and the other three buyers had with Stueve did not vest title in them immediately. Instead, it had a "take out" provision which entitled the buyers to a deed to three acres for each $40,000 they paid on the outstanding purchase price. This "take out" provision also stated that the buyers were obligated to have a licensed survey made containing the legal description of each three-acre tract conveyed to them. Plaintiff, on or about June 12, 1970, orally hired defendant, Thomas Popke, to make the first three-acre survey and gave Popke the Rakow survey to use as a guide to locating the three-acre tract. Popke then prepared and delivered to plaintiff a survey which stated the location, dimensions and area of the first three-acre tract.

Plaintiff, on April 23, 1971, paid the other three buyers $112,500 for their respective rights in the contract with Stueve, and also assumed the obligation of paying to Stueve the unpaid balance of $370,000. The agreement by which plaintiff purchased the interests of the other three buyers stated that the subject matter of their transaction was "30 acres more or less, Streamwood, Illinois." Plaintiff subsequently made two $40,000 installment payments to Stueve, and orally hired Popke on July 2, 1971, and again on July 10, 1972, to do surveys of the three-acre tracts for which plaintiff received deeds.

In late 1972, plaintiff sought a loan from 1st Savings of LaGrange Park to pay off entirely the balance of the purchase price. As a condition of the loan, plaintiff was required to obtain a survey of the main parcel except for the nine acres previously deeded to him. Plaintiff hired Dominic Marchese to do this survey of the remainder of the parcel. On November 15, 1972, after Marchese had finished surveying the remainder of the tract, plaintiff showed Marchese what the remainder appeared to be on the Rakow survey after deducting the nine acres already deeded to plaintiff. Marchese stated that the Rakow survey was wrong, that the remainder was not as great as the Rakow survey would indicate, and that the Rakow survey should have shown the area of the entire tract as 27.527 acres instead of 30.062 acres.

Plaintiff subsequently filed his complaint in the instant action. In count two plaintiff alleged that when he purchased the rights of DiBattista, Durante and Cairo in the contract with Stueve on April 23, 1971, he placed reliance on the fact that the Rakow survey showed the main parcel included 30.062 acres. Plaintiff further alleged that defendants were negligent in not discovering the error in the Rakow survey, and that he would not have purchased the interests of the other three buyers, or would have purchased their interests for less, if defendants had informed him that the original parcel contained only 27.527 acres.

Defendants moved for summary judgment on the ground that each of their three contracts with plaintiff only required them to prepare a survey reflecting the legal description of a three-acre tract and did not impose on them the duty of verifying the accuracy of the Rakow survey. The trial court agreed with defendants and granted their motion for summary judgment.

Plaintiff argues that a surveyor is required to exercise that degree of care which a surveyor of ordinary skill and prudence would exercise under similar circumstances and that if a surveyor causes harm by failing in this responsibility, he is liable for negligence. Plaintiff, therefore, maintains that summary judgment for defendants was improper because there was a genuine issue of material fact concerning whether defendants

breached this standard of care by failing to discover and inform plaintiff that the Rakow survey overstated the acreage of the original parcel.

Defendants agree with plaintiff regarding the standard of care required of a surveyor, but urge that this "standard of care" does not address the issue of whether they were properly granted summary judgment. They argue that summary judgment was properly granted because they had no duty to discover and inform plaintiff of the error in the Rakow survey. Defendants rely on the well-settled principle that they must have breached a duty owed plaintiff in order to be liable for negligence. Defendants maintain that the scope of their duty to plaintiff depended on the terms of their three contracts with plaintiff. They contend that each of these contracts merely called for them to make a three-acre survey and did not require them to verify Rakow's work by surveying the remainder of the original parcel. We agree with defendants.

■■ ■ It is well settled that one, who in the course of his business or profession contracts to supply information for the guidance of others in their business transactions, may be liable for negligence if he fails to supply material information which could affect a business decision of the person receiving the information. (*Penrod v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1979), 68 Ill. App. 3d 75, 385 N.E.2d 376.) However, before a defendant can be liable for negligence, he must have breached a duty owed the plaintiff. (*Murphy v. Ambassador East* (1977), 54 Ill. App. 3d 980, 370 N.E.2d 124.) In addition, "the existence of a duty in a negligence case is a question of law" (*Penrod v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1979), 68 Ill. App. 3d 75, 81, 385 N.E.2d 376) and, in the case of a defendant charged with negligence because of his failure to perform an act allegedly required by contract, the question of whether the defendant actually had a duty to perform the act usually must be determined from the terms of the contract. See *Georgetown Township High School District No. 218 v. Hardy* (1976), 38 Ill. App. 3d 722, 349 N.E.2d 88; *Better Food Markets, Inc. v. American District Telegraph Co.* (1953), 40 Cal. 2d 179, 253 P.2d 10.

■■ The affidavit of Popke submitted by defendants in support of their motion for summary judgment, as well as the counteraffidavit and deposition of plaintiff, show that defendants were not required by the terms of any of their contracts with plaintiff to verify the accuracy of Rakow's work by surveying the remainder of the original parcel.

In his affidavit, Popke stated that on June 12, 1970, plaintiff asked him to prepare a survey reflecting the legal description of a three-acre tract of land contained in a much larger parcel of property owned by plaintiff in Streamwood, Illinois. Popke also stated that plaintiff asked him to make

two more surveys, one on July 2, 1971, and another on July 10, 1972, of two additional three-acre tracts. In connection with the work, plaintiff furnished him with a copy of the Rakow survey to use as a guide in locating the individual three-acre tracts. Popke stated, however, that plaintiff never indicated to him that the Rakow survey was defective, and plaintiff never asked him to verify the accuracy of Rakow's survey or check the computation of the acreage. Popke's affidavit further stated that each of the three surveys he prepared for plaintiff required no more than one-half day to complete, and he was paid approximately $200 for each survey. In addition, Popke stated that if he had been asked to verify the acreage reflected in the Rakow survey, he would have been required to survey the entire parcel owned by plaintiff, which would have taken at least two or three days to complete, and would have cost close to $2,000. Finally, Popke stated that he was not aware of any error in any of the three-acre surveys he prepared for plaintiff and plaintiff has not informed him of the existence of any error in these surveys.

Plaintiff in his deposition stated that his three requests for surveys from Popke were entirely oral. Furthermore, plaintiff admits that in each instance he only told Popke he needed a three-acre survey to fulfill the "take out" provision of his contract with Stueve, and that while he gave Popke the Rakow survey to use as a guide, he never requested Popke to check the accuracy of the Rakow survey. In addition, plaintiff in his counteraffidavit did not dispute the statements by Popke that he only received $200 for each survey and that to verify the acreage reflected in the Rakow survey would have required him to survey the entire parcel, which would have taken two or three days and cost $2,000.

Statements in an affidavit presented in support of a motion for summary judgment are taken as true when not contradicted by counter-affidavits or depositions. (See *Empire Moving & Warehouse Corp. v. Hyde Park Bank & Trust Co.* (1976), 43 Ill. App. 3d 991, 357 N.E.2d 1196.) Plaintiff nevertheless contends that each of his contracts with defendants did require defendants to survey the remainder of the parcel, as well as an individual three-acre tract. In his deposition, plaintiff stated that when he hired Popke to do the first three-acre survey, he gave him the Rakow survey and simply "asked him to divide three acres out of it." Plaintiff maintains that because he never told Popke not to survey the remainder of the original parcel, each of his contracts with defendants, therefore, called for defendants to survey and divide the original parcel into two tracts, one containing three acres, the other containing 27.062 acres. In support, plaintiff relies on statements he made in his counteraffidavit to the effect that he never placed restrictions upon the scope of the work done by defendants in preparing the surveys, that defendants never

indicated that the scope of their surveying was in any way limited or restricted, and that he never discussed with defendants the fee to be paid for the surveys, and was ready to pay any reasonable fee.

In construing a contract, the intention of the parties is the determinative factor and their intention "must be determined from the language employed in the contract and, where there is no ambiguity, from such language alone." (*S & F Corp. v. American Express Co.* (1978), 60 Ill. App. 3d 824, 829, 377 N.E.2d 73.) Also, words should be interpreted in their ordinary meaning except where it clearly appears the parties intended them to have a peculiar or unusual meaning. (*Illinois Valley Asphalt, Inc. v. LaSalle National Bank* (1977), 54 Ill. App. 3d 317, 369 N.E.2d 525.) In addition, whether a contract is ambiguous is a question of law. *Lichtenstein v. Anvan Co.* (1978), 62 Ill. App. 3d 91, 378 N.E.2d 1171.

■ From the affidavit of Popke, as well as from the counteraffidavit and deposition of plaintiff, it is clear that none of the three oral agreements between plaintiff and defendants was ambiguous. Each time plaintiff hired defendants, plaintiff simply requested defendants to make a three-acre survey, and did not ask or require defendants to survey the remainder of the tract or to verify the Rakow survey. Defendants had no duty under the express terms of any of their contracts with plaintiff to discover and inform plaintiff that the original parcel contained only 27.527 acres, instead of 30.062 acres.

Plaintiff argues, however, that paragraph 7(e) of the Illinois Land Survey Standards was an *implied* condition of each of his contracts with defendants and required defendants to survey the remainder of the original parcel and include its dimensions and area on each of the three-acre surveys. That paragraph reads in part as follows:

"* * * Where only a fractional part of a recorded lot or parcel is included in [a] survey, the residual dimension of the balance of the lot or parcel should be indicated."

Plaintiff has presented nothing in his affidavit or deposition to indicate that the Illinois Land Survey Standards necessarily define the duties of a licensed surveyor. Furthermore, even if we agree that a surveyor ought to conform his work to these standards, the meaning of paragraph 7(e) is at least ambiguous concerning whether defendants should have actually surveyed the remainder of the original parcel. Plaintiff has presented no extrinsic evidence to support his interpretation. Consequently, the construction of paragraph 7(e) is a question of law to be decided in considering whether summary judgment was properly granted. See *Zannis v. Lake Shore Radiologists, Ltd.* (1979), 73 Ill. App. 3d 901, 392 N.E.2d 126.

Popke, as mentioned, stated in his affidavit that each three-acre

survey took a half day to complete and cost $200 and that to verify the acreage reflected in the Rakow survey would have necessitated surveying the remainder of the original parcel, which would have taken an additional two or three days and cost $2,000. These uncontradicted statements, taken as true (*Empire Moving & Warehouse Corp. v. Hyde Park Bank & Trust Co.* (1976), 43 Ill. App. 3d 991, 357 N.E.2d 1196), illustrate the differences in time and cost involved in doing a fractional survey as compared with doing both a fractional survey and a survey of the remainder of a parcel. If paragraph 7(e) is an implied condition of a contract for a fractional survey and requires the surveyor to also survey the remainder, then either the surveyor will be paid less than the value of the work he will have to perform, or else the other party to the contract will have to pay considerably more than he wished or expected to pay for work he did not expressly order.

We conclude that when a surveyor is expressly hired to make only a fractional survey, it is not the intent of paragraph 7(e) to impose the additional duty of surveying the remainder of the tract. Instead, we believe that, at most, it is the intent of paragraph 7(e) that when a surveyor makes a fractional survey, he should examine the master survey or other relevant document for the dimensions of the main parcel, subtract therefrom the dimensions of the fractional part in order to calculate the dimensions of the remainder, and then include the resulting dimensions of the remainder in the fractional survey. In other words, the dimensions of the remainder of the tract to be included in the fractional survey need only be as accurate as the dimensions of the master survey, and will not be based on an actual new survey of the remainder. Thus, defendants had no implied duty under paragraph 7(e) of the Illinois Land Survey Standards to discover and inform plaintiff that there were only 27.527 acres in the original parcel.

■■■ Summary judgment will be granted when the pleadings, affidavits, exhibits and depositions on file show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1977, ch. 110, par. 57.) While the pleadings, affidavits, exhibits and depositions should be construed strictly against the party moving for summary judgment and liberally in favor of the opponent (*Shockley v. Ryder Truck Rental, Inc.* (1979), 74 Ill. App. 3d 89, 392 N.E.2d 675), summary judgment is a means to avoid the expense and delay of trial where no genuine issue of fact exists (*Rivan Die Mold Corp. v. Stewart-Warner Corp.* (1975), 26 Ill. App. 3d 637, 325 N.E.2d 357), and its use is to be encouraged in a proper case. *Tatelman v. Tatelman* (1975), 25 Ill. App. 3d 678, 323 N.E.2d 821.

The pleadings, affidavits and plaintiff's deposition clearly show that defendants had no duty, either express or implied, to survey the remainder of the tract and thereby discover that the Rakow survey

overstated the acreage in the original parcel. Absent such a duty, defendants as a matter of law were not negligent in failing to discover the error in the Rakow survey. Summary judgment for defendants is affirmed.

Affirmed.

GOLDBERG, P. J., and CAMPBELL, J., concur.