CINDI NICHELSON, Plaintiff-Appellant, *v.* WILLIAM CURTIS *et al.*, Defendants (Lee Hurshman, Defendant-Appellee).

Fourth District   No. 4—82—0842

Opinion filed August 10, 1983.

GREEN, J., dissenting.

David V. Dorris, of Jerome Mirza & Associates, Ltd., of Bloomington, for appellant.

David L. Drake, of Heckenkamp & Simhauser, P.C., of Springfield, for appellees.

JUSTICE TRAPP delivered the opinion of the court:

Plaintiff, Cindi Nichelson, filed a two-count complaint against defendants William Curtis, M.D., and Lee Hurshman, M.D. Count II, which is the subject of this appeal, alleged that defendant Hurshman gave negligent advice to plaintiff's husband, resulting in her sterilization. Summary judgment was granted to Hurshman and plaintiff brings this appeal to review the propriety of that order. We affirm.

The pleadings, affidavits and depositions before the court indicate that in December of 1976, plaintiff was informed by defendant Curtis, an obstetrician and gynecologist in Springfield, that she was six to seven weeks pregnant. At the time, plaintiff and her husband, Kevin Nichelson, were living in Carbondale, Illinois, while Kevin was attending school. Defendant Hurshman is a pediatrician also practicing in Springfield and, according to plaintiff's deposition testimony, was chosen by her to be the baby's pediatrician. Contrary to plaintiff's claim, defendant Hurshman deposed that he was merely filling in for another doctor who was out of town.

Plaintiff received intermittent prenatal care in Carbondale but in June of 1977 returned to Springfield to deliver her baby. Prior to her return, defendant Curtis had informed plaintiff that previous complications from another birth indicated that delivery by cesarean method was necessary. Other complications were also observed by Curtis. Curtis had ordered plaintiff to undergo amnioscentesis and sonogram tests which indicated polyhydramnios, or excessive amniotic fluid, which may indicate abnormalities with the fetus. Whether these results were discussed with the plaintiff or her husband by Dr. Curtis is disputed by the parties.

Three days prior to the birth of the child, defendant Curtis, plaintiff, and plaintiff's husband discussed the possibility that plaintiff should be sterilized following the delivery. According to defendant Curtis the subject of sterilization was broached by plaintiff. Plaintiff stated that the idea of sterilization was first mentioned by Curtis. Later that day, plaintiff and her husband both signed a consent form which stated that they "request Dr. Curtis and assistants of his choice to perform upon Cynthia Nichelson the following operation: tubal sterilization." Both plaintiff and her husband understood the form and acknowledged their signatures on the document, but claimed that their consent to the sterilization was conditioned on the delivery of a healthy baby. Plaintiff's husband stated at his deposition that "we let him know in turn that we thought maybe it [sterilization] would be a good idea, but we did not want it done if there was going to be any complications. And he said he couldn't do it without signing the papers, and he said if we signed them and something comes up then we don't want you to do it unless we talk about it. And he [Dr. Curtis] understood that then ***." Plaintiff and her husband deposed that Curtis never mentioned any possible complications or abnormalities prior to the delivery of the baby. Plaintiff likewise indicated that she thought that the consent to sterilization was conditional on the delivery of a healthy baby. Plaintiff stated that "[we] wanted to make sure if everything was all right with the baby to go ahead but otherwise we did not want to do it." Defendant Curtis deposed that there were no conditions to the sterilization consent. Defendant Hurshman also denied any knowledge of an understanding between plaintiff and Curtis that the sterilization was in any way conditioned.

The birth and sterilization occurred on July 22, 1977, at Memorial Hospital in Springfield. Dr. Curtis was the doctor who performed the delivery and Dr. Hurshman was in the operating room to receive the baby and began his duties as the baby's pediatrician. The baby was delivered by cesarean method, and according to Hurshman it was im-

mediately apparent that it had a cleft palate. As indicated, Hurshman denied any knowledge of an understanding of a conditional consent but did state that following the delivery, Curtis asked him to go talk to plaintiff's husband to determine if Curtis should proceed with the sterilization. In the words of defendant Hurshman: "[H]e [Dr. Curtis] said, please ask him [plaintiff's husband] whether he still wants Mrs. Nichelson to be sterilized in view of the baby's congenital anomaly." Curtis likewise acknowledged that he asked Hurshman to discuss with plaintiff's husband whether the sterilization should be performed in light of the baby's problems.

The record indicates a sharp disagreement over what Hurshman told plaintiff's husband. According to Kevin Nichelson, defendant Hurshman told him that the baby had a cleft palate which could be surgically repaired, but otherwise was a normal infant. Defendant Hurshman denied making such statements and asserted that he informed Kevin that the baby had one congenital defect and could possibly have more, particularly problems with its central nervous and cardiovascular systems. Hurshman stated that Kevin was extremely upset after finding out that the baby had a cleft palate and could not decide what to do. He went back to the operating room to inform defendant Curtis that Kevin could not decide and Curtis told him to bring Kevin into the operating room so that he could talk with him. Nichelson accompanied Hurshman to the operating room and after talking to Curtis consented to the sterilization of his wife. The record does not disclose the substance of the conversation between Curtis and plaintiff's husband. A few days after the baby was delivered, it developed congestive heart failure and was transferred to St. Louis Children's Hospital. The baby died within six weeks of birth.

Count II, at issue *sub judice*, alleged that defendant Hurshman was negligent in informing plaintiff's husband that the baby was healthy and in failing to inform the plaintiff's husband of possible serious illnesses or disabilities. Plaintiff alleged that as a result of this negligent advice her husband consented to the sterilization procedure, contrary to the parties' conditional consent. Hurshman moved for summary judgment on count II, alleging that there were no material issues of fact to be resolved, that he had no knowledge of the alleged conditional consent, did not have a physician-patient relationship with plaintiff, and was entitled to a judgment as a matter of law. The trial court granted this motion.

Summary judgment is proper when the pleadings, depositions and admissions on file, together with any affidavits, establish that there is no issue as to any material fact and that the movant is enti-

tled to a judgment as a matter of law. (Ill. Rev. Stat. 1981, ch. 110, par. 2—1005; *Schuman v. Pekin House Restaurant & Lounge* (1981), 102 Ill. App. 3d 532, 430 N.E.2d 145.) The purpose of summary judgment is not to try an issue of material fact but to determine if a triable issue does exist. (*Beverly Bank v. Alsip Bank* (1982), 106 Ill. App. 3d 1012, 436 N.E.2d 598.) In determining if a material question of fact exists, the pleadings, depositions, affidavits and admissions, if any, should be construed strictly against the moving party and liberally in favor of the opponent. *Barnes v. Rakow* (1979), 78 Ill. App. 3d 404, 396 N.E.2d 1168.

██ █ The elements necessary to establish a cause of action for medical malpractice are the same as any other negligence case. To prevail, the plaintiff must prove that defendant owed him a duty which was breached, proximately causing injury, and resulting in damages. (*Spike v. Sellett* (1981), 102 Ill. App. 3d 270, 430 N.E.2d 597.) During the existence of a physician-patient relationship, a physician is under a duty to use due care in attending to the needs of the patient. (*Smothers v. Butler* (1979), 78 Ill. App. 3d 1018, 398 N.E.2d 12.) Here, there is no evidence that there ever existed between plaintiff and defendant Hurshman any semblance of a physician-patient relationship for the treatment of plaintiff or her husband. Plaintiff does not suggest that any *indicia* of a physician-patient relationship is shown by the record but appears to argue that a duty arose by defendant Hurshman's conduct in going to the waiting room, at the request of Dr. Curtis, to discuss with plaintiff's husband whether a tubal litigation should be performed.

The gist of plaintiff's argument is that since Dr. Curtis asked Dr. Hurshman to ask the husband whether plaintiff was to be sterilized in view of the baby's congenital anomaly:

> "A reasonable person could deem this request and what followed later, to be an assumption, by defendant, of the duty to obtain an informed consent for plaintiff's sterilization."

In describing the scope of this duty, plaintiff refers to the doctrine of informed consent, under which a doctor is required to disclose to his patient the foreseeable risks and results of medical treatment as well as alternatives to such procedure. (See *Magana v. Elie* (1982), 108 Ill. App. 3d 1028, 439 N.E.2d 1319; *Green v. Hussey* (1970), 127 Ill. App. 2d 174, 262 N.E.2d 156.) Plaintiff argues that defendant Hurshman had a duty to provide Kevin with an explanation of the proposed procedure, full information of the baby's health and possible birth defects, and alternatives to the tubal sterilization. Plaintiff claims that the breach of this duty was the proximate cause of her damage.

We agree with plaintiff's implicit argument that the absence of a physician-patient relationship is not dispositive of defendant's liability since liability can still be found if the evidence shows that defendant Hurshman voluntarily assumed a duty. As noted in *Cross v. Wells Fargo Alarm Services* (1980), 82 Ill. 2d 313, 317, 412 N.E.2d 472, 474: "A duty voluntarily assumed must be performed with due care or 'such competence and skill as [one] possesses.' " The construction of this hypothesis is not supported in the record established by the depositions of the defendants. There is no contention that Dr. Hurshman attended the conference or discussion between the plaintiff, her husband, and Dr. Curtis at which the proposal for the additional surgery and the terms of the alleged conditions were discussed. Dr. Curtis' deposition and that of Dr. Hurshman each state that Dr. Hurshman was not advised that a discussion about the tubal ligation was conditioned on the determination that the baby was healthy. Upon the event, it appears that the husband did not make any decision upon advice from Dr. Hurshman but was undecided and made no choice until he conversed with Dr. Curtis.

The trial court found that Dr. Hurshman assumed no duty and that there was no proximate cause. We too conclude that Dr. Hurshman cannot be deemed to have assumed a professional duty by "agreements" arising from discussions in which he did not participate and concerning which he was not advised or informed. Further, liability predicated on negligence requires a showing that the injuries were the natural and probable consequences of the complained-of conduct or omissions. (*Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 117 N.E.2d 74; *Bak v. Burlington Northern, Inc.* (1981), 93 Ill. App. 3d 269, 417 N.E.2d 148.) As noted in *Ney*: "The injury which could not have been foreseen or reasonably anticipated as the probable result of an act of negligence is not actionable, and such an act is either a remote cause, or no cause whatever of the injury." 2 Ill. 2d 74, 80, 117 N.E.2d 74, 79.

The question of foreseeability in relation to proximate cause is illustrated in the context of Hurshman's conversation with plaintiff's husband. First, if Hurshman was unaware that the sterilization decision was being based upon his advice to plaintiff's husband, then holding him liable for failing to adequately disclose the condition of the infant to plaintiff's spouse would impose liability for remote and unforeseeable consequences. Secondly, holding Hurshman liable for giving negligent advice to plaintiff's spouse if he could foresee the possibility that plaintiff's spouse would use this information to decide whether to authorize the sterilization would be altogether different. In

the former example, the consequences of a negligent act are unforeseeable while in the latter they are not. The only clear indication of Hurshman's knowledge is found in his affidavit which avers that "the affiant [Dr. Hurshman] did not care for or treat plaintiff, Cindi Nichelson, and had no knowledge of the alleged conditional consent for the tubal ligation." In light of plaintiff's failure to file opposing affidavits or move to strike this response, the trial court could treat this statement as true. *Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 272 N.E.2d 497.

Other issues have been raised by the parties, but our affirmance is for the reasons stated. The order of the trial court, granting defendant Lee Hurshman's motion for summary judgment, is affirmed and the cause is remanded for further proceedings on count I.

Affirmed and remanded.

MILLS, J., concurs.

JUSTICE GREEN, dissenting:

The question presented here is difficult and is apparently one upon which there is no direct authority. However, I cannot agree that, taking the evidence of record before us most favorably to plaintiff, no showing was made that defendant Hurshman owed her a duty of care in advising her husband as to the condition of the baby.

Whether Hurshman, merely by virtue of his employment as pediatrician for the newborn child, had a duty to plaintiff to use skill commensurate with one in that specialty, in advising plaintiff's husband of the condition of the child, is a question upon which there is no direct authority in this State. (See 61 Am. Jur. 2d *Physicians, Surgeons, and Other Healers* sec. 229, at 358 (1981).) However, superimposed upon any duties owed by Hurshman as a pediatrician were other duties which arose when, while in the operating room at plaintiff's employment, he agreed to assist Curtis in determining whether a sterilization procedure should be performed. In doing this, he was aiding Curtis in the performance of Curtis' services directly to plaintiff, and thus created a physician-patient relationship at that time.

Hurshman admitted that the reason he made inquiry of plaintiff's husband in regard to whether the sterilization should be performed was because of the question of the condition of the baby. The circumstances gave a strong inference that plaintiff, who was under anesthetic, had delegated to her husband final power to determine whether that sterilization should be performed. Were this so, had Cur-

tis advised plaintiff's husband in regard to the baby's condition in order to get final authority to perform a procedure that would otherwise be a battery, he would have been under a duty to use professional care in advising as to the condition of the baby. The same duty would be imposed upon Hurshman when he agreed to assist Curtis.