Kris **ROBERTS, as Guardian and Next Friend of Joshua Roberts, a Minor, Plaintiff,**

v.

**Dr. V.K. PATEL, Dr. Johnson Dy, Dr. Malawka, Dr. J.M. Cava, Dr. Robert Lee and Christ Hospital, Defendants.**

No. 84 C 3926.

United States District Court, N.D. Illinois, E.D.

Sept. 27, 1985.

William C. Murphy and Robert M. Foote, Murphy, Hupp, Foote & Mielke, Aurora, Ill., for plaintiff.

Rudolf G. Schade, Jr., Cassidy, Schade & Gloor, Timothy A. Weaver, Pretzel & Stouffer, Howard T. Brinton and Jack Silhavy, Wildman, Harrold, Allen & Dixon, Chicago, Ill., for defendants.

## ORDER

NORGLE, District Judge.

Plaintiff, Kris Roberts, as guardian and next friend of Joshua Roberts ("JOSHUA") brings this malpractice action on behalf of Joshua against Christ Hospital and the above individually-named physicians, surgeons and anesthesiologists for injuries to Joshua arising out of his delivery. The complaint is in six counts, claiming mal-

practice, *res ipsa loquitur*, and informed consent actions against the Hospital and against the individually-named physicians and surgeons. The Hospital and the physicians have moved under Fed.R.Civ.P. 12(b)(6) to dismiss the plaintiff's claim with respect to the informed consent counts only. For the reasons stated below, defendants' motions are denied.

Plaintiff's informed consent count alleges that Joshua's natural mother, who is not a party to this suit, was told by Dr. Cava and others while she was in labor with Joshua, that a caesarean section should not be performed, and further, that the natural mother's labor should be temporarily halted by use of alcohol and other drugs. Plaintiff alleges that Joshua's mother then questioned the doctors about the possible risks, dangers, and complications of the prescribed course of treatment and about the propriety of such treatment. Plaintiff's complaint states that the doctors informed Joshua's mother that the recommended procedure was necessary and proper and would result in the delivery of a healthy baby. The complaint also states that Joshua's natural mother agreed to the procedure, and as a direct and proximate cause of the treatment, Joshua suffered permanent spastic quadriplegia. Plaintiff further alleges the doctors should have known quadriplegia to be a reasonably likely consequence of the prescribed treatment and should have informed her of that risk. Had she been informed of the likelihood of the complication, she would have not consented to the course of treatment.

As the court reads them, defendants' motions to dismiss raise two contentions. First, Defendants argue that their motions to dismiss should be granted because Illinois does not recognize the right of a parent to consent to medical treatment on behalf of an unborn fetus, *in utero*. This court is at a loss to say who may consent to the treatment of an unborn fetus if not the unborn fetus' parent.[1] Illi-

---

1. If the parent could not give consent on behalf of the child, any non-emergency surgical proce-

dures performed would constitute a battery upon the infant, subjecting physicians such as

nois law clearly recognizes the right of a parent to consent to treatment on behalf of a minor child. *See* Ill.Rev.Stat. ch. 111, § 4502 (1983); *Skaggs v. Industrial Commission*, 371 Ill. 535, 21 N.E.2d 731 (1939). *See generally* Brown & Truitt, *Rights of Minors to Medical Treatment*, 28 De Paul L.Rev. 289 (1979). We hold that a parent may properly give consent for treatment on behalf of her unborn fetus.

The second basis for dismissal raised by the defendants is that if a right to informed consent exists at all, the right belongs uniquely to the child's natural mother. Plaintiff, as child's adopted mother and legal guardian, may not maintain a malpractice action based on informed consent against the defendants.

■ The doctrine of informed consent requires that prior to administering medical treatment, a physician or surgeon must inform the patient of the "diagnosis, the general nature of the contemplated procedure, the risks involved, the prospects of success, the prognosis if the procedure is not performed and alternative medical treatment." 2 D. Louisell & H. Williams, *Medical Malpractice* ¶ 22.01 to 22.65 (1985); *Magana v. Elie*, 108 Ill.App.3d 1028, 64 Ill.Dec. 511, 439 N.E.2d 1319 (1982). The purpose behind the doctrine is to afford the patient the ability to make an informed, intelligent decision regarding medical treatment he is to receive. *Miceikis v. Field*, 37 Ill.App.3d 763, 347 N.E.2d 320, 324 (1976); *see Canterbury v. Spence*, 464 F.2d 772 (D.C.Cir.), *cert. denied*, 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518 (1972); *Halley v. Birbiglia*, 390 Mass. 540, 458 N.E.2d 710, 714 (1983). The malpractice arises out of a failure to disclose or a failure to provide sufficient disclosure of material risks of a procedure that a "reasonable medical practitioner would have disclosed under the same or similar circumstances." *Green v. Hussey*, 127 Ill.App.2d 174, 184, 262 N.E.2d 156, 161 (1970); *Maga-*

*na*, 108 Ill.App.3d at 1031–32, 64 Ill.Dec. at 514, 439 N.E.2d at 1322.

■ The elements of the informed consent action parallel those of an ordinary malpractice claim. The plaintiff must plead and ultimately prove that (1) a physician has a duty to disclose material risks; (2) he failed to disclose or inadequately disclosed those risks; (3) as a direct and proximate result of the failure to disclose the patient consented to treatment he otherwise would not have consented to; and (4) the proposed treatment caused injury to plaintiff. *Nichelson v. Curtis*, 117 Ill. App.3d 100, 72 Ill.Dec. 630, 632, 452 N.E.2d 883, 885 (1983). Expert medical testimony is required in establishing the proper duty of disclosure. *Taber v. Riordan*, 83 Ill. App.3d 900, 38 Ill.Dec. 745, 403 N.E.2d 1349 (1980); *Green*, 127 Ill.App.2d at 184, 262 N.E.2d at 161.

Plaintiff has alleged each of these elements and defendants, in effect, contest only one element. Defendants argue that the only duty of disclosure owing was to Joshua's natural mother, who is not a party to this action. Because no duty is owed to Joshua's guardian and adopted mother, there can be no cause of action based on informed consent. We must reject this argument.

Illinois has expressed its concern for the protection of an unborn fetus, *in utero*, from actions which would harm the fetus in many contexts. Illinois has made it a crime to cause the death of a fetus while the mother is injured during pregnancy if the fetus is capable of sustained life outside the womb at the time of its death. Ill.Rev.Stat. ch. 38, §§ 9–1.1(a) & (c). It has expressed its strong public policy to protect an unborn child from the moment of conception, *id.* at §§ 81–11, 81–21, and has actively sought to regulate abortions within constitutionally permissible parameters. *See Charles v. Daley*, 749 F.2d 452 (7th Cir.1984) (interpreting Illinois Abortion statute). It has enacted legislation pre-

---

defendants to intentional tortious liability. *Lojuk v. Quandt*, 706 F.2d 1456, 1460 (7th Cir. 1983) (malpractice and battery actions are both

possible in operations performed without consent).

venting a terminally-ill pregnant woman, during the course of her pregnancy, from terminating life sustaining treatment until the child is born. Ill.Rev.Stat. ch. 110½, § 703(c).

Additionally, Illinois tort law has recognized the right to bring an action based on injuries sustained to the fetus. *See Renslow v. Mennonite Hospital*, 67 Ill.2d 348, 10 Ill.Dec. 484, 367 N.E.2d 1250 (1977). In *Renslow*, the Illinois Supreme Court surveyed the caselaw on whether a plaintiff may recover for prenatal injuries. The court concluded that the retreat from the common law rule barring recovery to an infant because the infant has no "independent legal significance," expressed in *Dietrich v. Inhabitants of Northampton*, 138 Mass. 14, 52 Am.Rep. 242 (1884) and *Allaire v. St. Luke's Hospital*, 184 Ill. 359, 56 N.E. 638 (1900), "was perhaps the most rapid reversal of a common law tradition." *Renslow*, 67 Ill.2d at 351, 10 Ill.Dec. at 486, 367 N.E.2d at 1252. The Illinois Supreme Court overruled *Allaire* in *Amann v. Faidy*, 415 Ill. 422, 432, 114 N.E.2d 412, 421 (1953), holding that right of action for the wrongful death of a viable fetus injured, *in utero*, exists if the child was born alive and subsequently died. *See also Rodriquez v. Patti*, 415 Ill. 496, 114 N.E.2d 721 (1953). The court extended the right to recover damages for injuries suffered, *in utero*, but where the fetus was thereafter born dead. *Chrisafogeorgis v. Brandenberg*, 55 Ill.2d 368, 304 N.E.2d 88 (1973). The *Renslow* Court went on to reject the viability limitation because it found viability to be an inherently imprecise and unsatisfactory criterion to determine the extent of liability; it found viability to be an uncertain limitation which often precluded recovery in the most meritorious claims. *Renslow*, 67 Ill.2d at 352, 10 Ill.Dec. at 486–87, 367 N.E.2d at 1252–53. The court then held that a fetus may recover for injuries suffered as a result of a wrong occuring prior to conception. *Id.* "We believe that there is a right to be born free from prenatal injuries caused by a breach of duty owed to the child's mother." *Id.* 67 Ill.2d at 357, 10 Ill.Dec. at 489, 367 N.E.2d at 1255.

■ In light of the strong Illinois policy favoring protection of a fetus, and in light of Illinois' recognition of a protectable interest in the fetus in ordinary malpractice claims, even prior to conception, we hold that Joshua's mother's physicians owed a duty of informed disclosure not only to Joshua's mother, but to Joshua as well; in this situation the physician had two patients. The creation of a duty is "an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." *Renslow*, 67 Ill.2d at 356, 10 Ill.Dec. at 488, 367 N.E.2d at 1254, (quoting Prosser, *Torts*, sec. 53, at 325–26 (4th ed. 1971)). If a physician owes a duty to a parent and unborn child for injuries to the child prior to its conception, then a physician certainly owes a duty to an unborn fetus, who is alleged to have sustained quadriplegia, moments before its birth.

The injury involved in this case was sustained by the infant Joshua. The risks coincident with the prescribed treatment flowed primarily to the infant. The physician must have a duty to disclose to his patient risks not only to the mother but to the child as well. In making an informed decision, Joshua's natural mother was concerned not only about risk of the treatment to her own safety but also to her unborn child. Indeed, the risks to her child may have been paramount in her concerns. The complaint states that only upon being assured of delivery of a "healthy baby" did Joshua's natural mother agree to such procedures. In such situations the failure to inform the natural mother of risks inherent in a procedure subjected *both* the mother and her unborn child to unwarranted risks of unwanted treatment. It is merely fortuitous that only one of the physician's patients was harmed. Both Joshua and Joshua's mother may bring an action based on informed consent for failure of the defendant to obtain from Joshua's mother an

informed consent.[2] "As in any other tort case, the defendant must bear the burden for injuries resulting from its own negligence. [To hold otherwise] would in effect immunize from liability those in the medical field from providing inadequate guidance to persons who would choose [alternative treatment]." *Robak v. United States,* 658 F.2d 471, 476 (7th Cir.1981). Because Joshua may pursue this cause of action, Joshua's legal guardian may pursue it on his behalf. Defendants' motions to dismiss are denied.

IT IS SO ORDERED.

**2.** This district has permitted a child to bring an action based on informed consent against physicians for treatment performed on her mother while the mother was carrying her. *Wetherill v. University of Chicago,* 570 F.Supp. 1124 (N.D.Ill. 1983). The plaintiffs, who were exposed *in utero* to defects caused by DES administered to their mother, brought an informed consent action claiming that their mothers were not informed of the serious potential risks of the drug on their daughters. *Cf. Mink v. University of Chicago,* 460 F.Supp. 713, 716–17 (N.D.Ill.1978).